**[J-88-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 18 WAP 2014 |
| | : |
| Appellant | : Appeal from the Order of the Superior |
| | : Court dated December 13, 2013 at No. 55 |
| | : WDA 2013, vacating the judgment of |
| v. | : sentence of the Court of Common Pleas of |
| | : Clearfield County dated December 4, |
| | : 2012 at CP-17-CR-0000541-2012, and |
| JASON LEE HOOVER, | : remanding. |
| | : |
| Appellee | : |
| | : ARGUED: October 7, 2014 |

**OPINION**

**MR. CHIEF JUSTICE CASTILLE**          **DECIDED: DECEMBER 30, 2014**

The Commonwealth appeals from a Superior Court Order vacating appellee's judgment of sentence for theft by unlawful taking, receiving stolen property, criminal conspiracy, and corruption of minors,[1] and remanding for a new trial. The Superior Court panel concluded that the trial court abused its discretion in determining that the probative value of appellee's prior crime of dishonesty (*crimen falsi*) substantially outweighed its prejudicial effect. For the following reasons, we reverse the order below and remand for the Superior Court to consider appellee's remaining claim regarding appellee's proposed alibi testimony.

---

[1] 18 Pa.C.S. §§ 3921(a), 3925(a), 903(a)(1), and 6301(a)(1)(i), respectively.

I.

On April 20, 2012, the Commonwealth filed a criminal complaint against appellee alleging that on April 4, 2012, appellee and two co-conspirators, Barry Martell and D.M., a juvenile, stole parts and equipment from RES Coal Company in Goshen Township, Clearfield County, and later sold the stolen parts to a local salvage yard. On October 4, 2012, appellee filed a motion *in limine* seeking to preclude the Commonwealth from impeaching him with evidence of his 1998 *crimen falsi* conviction which resulted from appellee's guilty plea, at twenty-two years of age, to a single third-degree felony count of receiving stolen property. Acknowledging the specific list of five factors reiterated by this Court in Commonwealth v. Randall, 528 A.2d 1326 (Pa. 1987), to be considered in determining whether remote *crimen falsi* adjudications -- *i.e.*, those that are more than ten years old -- are admissible as more probative than prejudicial, the trial court found that the balance of those factors weighed in favor of admitting appellee's single *crimen falsi* conviction for impeachment purposes. Specifically, the trial court considered:

> (1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; [(]3) the age and circumstances of the defendant; [(]4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and [(]5) the existence of alternative means of attacking the defendant's credibility.

Id. at 1328 (quoting Commonwealth v. Roots, 393 A.2d 364, 367 (Pa. 1978), abrogated in part as stated in Commonwealth v. Rivera, 983 A.2d 1211 (Pa. 2009)). The trial court

determined that factors one, three, four, and five weighed in favor of the Commonwealth, enhancing the probative value of appellee's *crimen falsi* conviction, while only the second factor weighed in appellee's favor, increasing the potential improper prejudicial impact of appellee's prior conviction. With this analysis, the trial court denied appellee's motion *in limine*.

At trial, D.M., testifying for the Commonwealth, stated that appellee was involved in the theft and that D.M., Martell and appellee had all agreed to steal the items and sell them for cash. Appellee then took the stand in his own defense in support of a claim of total innocence, stating that he was unaware of the theft, and that Martell and D.M. stole the items without his knowledge or participation. At the close of his testimony, and in the presence of the jury, the prosecutor asked the trial court to take judicial notice of appellee's prior *crimen falsi* conviction. N.T., 10/22/12, at 201.[2]

Thereafter, the parties proceeded immediately to closing arguments. Appellee's counsel did not address appellee's prior *crimen falsi* conviction during his closing, but instead, counsel vigorously attacked D.M.'s credibility, employing no unusual points of impeachment. Thus, counsel argued that D.M. was not telling the truth, that his testimony was from a corrupt and polluted source, and that it should be received with great caution because D.M. had an interest in the outcome of the case, having admitted to being a thief and being involved in the crime at issue. Id. at 206, 210. In a similar attempt to persuade the jury not to accept appellee's testimony, the prosecutor made use of appellee's prior conviction in his closing argument as follows:

> I argue to you that, you know, who's telling the truth
> and who's being factually correct and honest with you people

---

[2] There is no issue before the Court respecting the manner by which the prior conviction was introduced.

is an issue for [you to] decide, but after the [C]ommonwealth -- or, after the defendant testified, the [C]ommonwealth introduced a prior conviction of the defendant for a crime called receiving stolen property.

And I offered that, or am allowed to offer that, to you because receiving stolen property's called a crimen falsi, a crime of dishonesty. So I don't say, hey, the defendant was convicted of receiving stolen property in the past; therefore, he must have done it this time. I say to you that the defendant was convicted in the past of a crime of dishonesty so, therefore, you can consider that when you decide who's telling the truth, who's being honest or dishonest.

Id. at 232. Appellee lodged no objection to the prosecutor's argument.

Immediately following closing arguments, the court issued its jury instructions, which included its instruction regarding the treatment of appellee's prior *crimen falsi* conviction. The court stated:

Now, there was evidence here tending to show that the defendant has a prior criminal conviction. And I'm talking about the record introduced by the [C]ommonwealth as to his prior conviction of receiving stolen property, all right.

Note that this evidence about that prior conviction from 1998 is not evidence of the defendant's guilt. You must not infer guilt from the evidence of that prior conviction. This evidence may be considered by you for one purpose only. That is, to help you judge the credibility and weight of the testimony given by the defendant as a witness in this trial.

So in considering the evidence of that prior conviction, you may consider the type of crime committed and how long ago it was committed, and how it may affect the likelihood that the defendant has testified truthfully in this case.

Id. at 246-47. Neither party objected to this instruction.

Following trial, the jury found appellee guilty of theft by unlawful taking, receiving stolen property, criminal conspiracy and corruption of minors. The trial court later

sentenced appellee to an aggregate term of twenty-one to sixty months of imprisonment, and appellee appealed to the Superior Court.

On appeal, appellee raised two evidentiary issues: he claimed that the trial court abused its discretion in admitting his prior *crimen falsi* conviction, and in prohibiting the testimony of appellee's alibi witness. Addressing the *crimen falsi* issue, the Superior Court panel, in an unpublished decision, reweighed the five factors addressed in Randall, and vacated the judgment of sentence and remanded the matter for a new trial. Given its disposition, the panel did not reach the issue of appellee's alibi witness. On the Randall question, the panel agreed with the trial court that factors one, four and five weighed in favor of the Commonwealth, *i.e.*, in favor of admissibility, but took issue with the trial court's weighing of factors two and three. Regarding the third factor -- the defendant's age and circumstances -- the panel found that commission of a *crimen falsi* at the age of twenty-two could not be held against appellee, and therefore this factor was neutral, instead of weighing in favor of the Commonwealth as the trial court had concluded. And finally, with respect to the second factor -- the likelihood of the defendant's record having a greater tendency to prejudice the defendant by showing a criminal propensity rather than to discredit -- the panel disagreed that this factor merely weighed in favor of appellee, but insisted instead that it weighed heavily in appellee's favor, indeed to the extent of "extreme prejudice." Super. Ct. Slip Op. at 14. Based on the panel's disagreement with the trial court regarding these two out of the five relevant factors, the panel concluded that the trial court abused its discretion in admitting evidence of appellee's prior *crimen falsi* conviction. We granted the Commonwealth's petition for allowance of appeal.

II.

In support of the trial court's discretionary evidentiary ruling, the Commonwealth argues that the admission of appellee's prior conviction was proper according to the relevant five-factor analysis set forth by this Court in Randall. The Commonwealth contends that the sole purpose of admitting the prior conviction was to impeach appellee's credibility since he took the stand as a witness in his own defense, and his testimony, claiming non-involvement, was the only direct evidence of such non-involvement, and the testimony of the lone eyewitness presented by the Commonwealth directly contradicted appellee's account. While the parties and the lower courts agree that the first Randall factor -- the degree to which the prior conviction reflects on veracity -- favors admissibility since the prior offense was *crimen falsi* in nature, the Commonwealth argues that the second factor -- the likelihood of a greater tendency that the criminal record will prejudice the defendant by showing criminal propensity -- should not weigh as heavily as the Superior Court panel weighed it in favor of appellee. The Commonwealth does not contest that there was a potential for prejudice to appellee, but maintains that the test is whether the prejudice is outweighed by probative value, and in the Commonwealth's view, the remaining factors reveal the probative value of the prior offense in the instant matter.

Moreover, the Commonwealth insists that the likelihood of improper prejudice was low in this case because the prosecutor's references to the prior offense were few and brief, and because the prosecutor specifically argued to the jury that the crime was relevant only to assess appellee's truthfulness on the stand, and not to show his criminal propensity. The Commonwealth further notes that the single prior offense at issue would have less of a tendency to cause an unfair prejudicial effect than was present in several other Pennsylvania reported decisions where multiple prior offenses

were deemed admissible for purposes of impeachment, despite the potential to suggest criminal propensity. See, e.g., Rivera, 983 A.2d at 1228 ("we conclude that the trial court acted within its discretion in determining that Appellant's [five] previous *crimen falsi* adjudications were more probative than prejudicial.").

Further addressing the third factor, the Commonwealth argues that a twenty-two-year old individual should be regarded as responsible and accountable for his actions, and that appellee's age at the time of his prior crime should not be regarded as lowering the probative value of the evidence in this case, but should actually weigh in favor of admissibility. In support of this argument, the Commonwealth again cites Rivera, where this Court concluded that the trial court acted within its discretion in determining that juvenile adjudications involving *crimen falsi* were more probative than prejudicial. And, with regard to factors four (strength of case) and five (existence of alternate means of impeachment), the Commonwealth explains that this case came down to a credibility determination between appellee and the Commonwealth's chief witness -- two accused criminal confederates -- who had starkly different versions of the events, and therefore appellee's prior conviction was essential to the Commonwealth's case. Along these lines, the Commonwealth notes that there was no other direct impeachment evidence available to the government. Thus, the Commonwealth maintains that the trial court did not abuse its discretion in allowing the Commonwealth to introduce, and then make reference to, the single prior *crimen falsi* for impeachment purposes only.

In response, rather than make a specific argument as to how the trial court might have abused its discretion, appellee insists that:

> [T]he only issue before this Honorable Court is whether the probative value of [appellee's] 1998 Receiving Stolen Property conviction substantially outweighs the prejudicial effect after [appellee] testified he did not steal, did not

> receive stolen property and did not conspire with others to
> steal property.

Appellee's Brief at 4. According to this framing of the issue before this Court, the bulk of appellee's argument concerns the proper weighing of the prejudicial effect and probative value of his prior *crimen falsi* conviction. Appellee thus focuses his attention on the second factor of the five-factor analysis -- the likelihood of a greater tendency of the defendant's criminal record to smear him by showing his criminal propensity. Appellee then attempts to support the panel's reweighing of this factor by looking primarily to caselaw from outside of this Commonwealth and other Superior Court precedent to make the point that evidence of a prior conviction for the very same crime for which a defendant is being tried contains an inherent suggestion of criminal propensity. Appellee maintains that since the evidence against him was not overwhelming, the admission of the prior offense in this instance was particularly damaging and prejudicial. Appellee concedes that the credibility determination was the central issue at trial. Nonetheless, appellee discounts precedent relied upon by the trial court for the proposition that the need to introduce evidence of prior *crimen falsi* convictions is high where the jury must decide whether to believe a single Commonwealth witness or a single defense witness in order to reach a verdict. Appellee's Brief at 8 (citing Commonwealth v. Palo, 24 A.3d 1050 (Pa. Super. 2011)).

Appellee makes no attempt to support the panel's holding regarding the third factor, *i.e.*, that a crime by a twenty-two year old ought not to be used against him thereafter because of his age. Notwithstanding, appellee insists that the Superior Court's ruling should be affirmed because the probative value of his prior *crimen falsi* conviction did not substantially outweigh its potential prejudicial effect.

III.

We hold that the Superior Court panel's decision cannot stand, because the panel paid insufficient deference to the discretionary decision of the trial court, and is not otherwise supported by Pennsylvania law. "When reviewing the denial of a motion *in limine*, this Court applies an evidentiary abuse of discretion standard of review. . . . It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." Rivera, 983 A.2d at 1228 (citation and quotation marks omitted). Thus, the Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. Commonwealth v. Laird, 988 A.2d 618, 636 (Pa. 2010). A determination that a trial court abused its discretion in making an evidentiary ruling "may not be made 'merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.'" Id. (quoting Commonwealth v. Sherwood, 982 A.2d 483, 495 (Pa. 2009)). Further, discretion is abused when the law is either overridden or misapplied. Commonwealth v. Randolph, 873 A.2d 1277, 1281 (Pa. 2005).

Our review of the Superior Court's assessment of the trial court's discretionary decision, of course, is not deferential, but plenary and *de novo*. This Court is in the same position as the Superior Court when reviewing discretionary trial level determinations. Moreover, we are mindful that the question is not how we might have balanced the Randall factors had we been presiding over the trial. The question is whether the trial court's balancing fell within its discretionary authority.

Here, the Superior Court panel recognized that the trial court correctly identified and considered the governing substantive law: the Randall line of cases setting forth the

requisite factors governing the admission of remote *crimen falsi* convictions. Nor did the panel, or appellee for that matter, suggest that the trial court's judgment was manifestly unreasonable, the product of partiality, prejudice or ill-will, clearly erroneous, or represented a misapplication, or overriding of, Pennsylvania law. Rather, in overturning the trial court, the panel appears to have reweighed the probative value of appellee's prior *crimen falsi* offense and its potential prejudicial effect by reapplying the requisite five-factor analysis on its own assessment, and then determined that the trial court abused its discretion because the panel, analyzing a cold record, reached a different conclusion. The panel's approach and determination cannot stand.

The difference between the trial court's analysis and that of the Superior Court fundamentally is not a matter of legal error on the part of the trial court, but a reflection of differences in judgment in weighing and reweighing the same identified factors, yet reaching different conclusions. On the record here, where the trial court considered all factors in light of the case that unfolded before it, and where measures were taken, both by the trial court and the prosecutor, to ensure that the *crimen falsi* evidence was not misunderstood or misused, it cannot be said that the trial court's decision suffers from such a lack of support that it is clearly erroneous. This is particularly so where there is no real dispute that of the five enumerated considerations in <u>Randall</u>, only one, a factor which was addressed and weighed by the trial court, has been argued to counsel against the trial court's discretionary decision. At least three of the remaining four factors counsel in support of the trial court's discretionary ruling.

But, it is not a matter of merely counting up factors. The vesting of discretion allows for flexibility in balancing factors, according to the circumstances. Thus, for example, there is certainly some force in appellee's argument that, when the prior crime involves the same basic offense currently being tried, there is a greater likelihood that a

juror might lapse into viewing the prior crime as indicating a propensity for that particular type of crime. But, on the other hand, here, there was but one prior offense; obviously, the greater the number of prior *crimen falsi* convictions, the greater the danger of assuming propensity. And, the trial court took specific measures to deter the jury from considering the *crimen falsi* as establishing propensity. Appellee's argument that admission of his *crimen falsi* could have been particularly harmful because the case came down to the credibility of two witnesses and the evidence thus was not overwhelming misses the complexity of the trial court's discretionary task. If the *crimen falsi* undermined appellee's case because the jury used it as a basis to discredit his testimony -- which is how the evidence was posed to the jury by both the prosecutor and the judge -- that was a proper use, properly "prejudicial" to appellee's case, and not a basis for exclusion. Moreover, in understanding the totality of the circumstances affecting the trial court's decision, it should be remembered that the Commonwealth's prime witness was subject to impeachment as well, on multiple grounds, which obviously increases the importance, to the Commonwealth, of a similarly well-established form of impeachment. The point, we reiterate, is not how an appellate court might balance all of these factors, but rather, whether the trial court's balancing so departs from what is reasonable that it can be set aside.

Beyond the panel's failure to observe the jurisprudential limitations of the abuse of discretion standard of review, the Superior Court approach and decision are inconsistent with Pennsylvania law. Evidence to impeach the credibility of a witness is admissible so long as it is relevant to that purpose and not otherwise barred. Pa.R.E. 607(b). Under settled law, evidence that a witness has been convicted of *crimen falsi* is generally admissible, unless the conviction (or release from confinement, whichever is later) is more than ten years old. Pa.R.E. 609(a), (b). It is only when the *crimen falsi*

conviction is more than ten years old, as it is here, that evidence of the conviction becomes conditioned on the probative value of the evidence substantially outweighing its potential prejudicial effect. Pa.R.E. 609(b)(1). The five Randall factors then guide that discretionary determination.

Here, the trial court concluded that evidence of appellee's prior crime was admissible because, although the prior conviction might suggest criminal propensity to the jury, each of the other relevant factors weighed in favor of the Commonwealth. The court found that the prior conviction reflected on appellee's veracity and that appellee was old enough at the time of the conviction to have appreciated the consequences of his actions. Further, the court found that the Commonwealth's case relied on D.M.'s testimony of the events, which conflicted with appellee's account. Therefore, the court concluded, the Commonwealth's need to use the prior conviction as impeachment evidence was high because alternative means of attacking appellee's veracity were minimal. As noted, the court instructed the jury to limit its consideration of appellee's prior *crimen falsi* offense to the sole purpose of assessing the credibility and weight of his testimony, and the Commonwealth specifically argued that the evidence was offered only to impeach appellee's credibility.

The Superior Court panel agreed that the conviction reflected upon appellee's veracity and that the Commonwealth needed the evidence to attack appellee's credibility. Nevertheless, the panel disagreed, apparently as a matter of law, with the weight that the trial court afforded to appellee's age at the time of the prior conviction and the weight afforded to the similarity between the prior and instant crimes in determining prejudice, again apparently as a matter of law. Notably, the panel cited former Chief Justice Nix's **dissenting opinion** in Randall when it stated, without underlying support, that "the probative value of a conviction when an individual is in his

early twenties is small" and, as a result, held that its value in the five-factor analysis was "neutral and neither weigh[ed] in favor nor against introduction of the prior conviction." Super. Ct. Slip Op. at 10-11 (citing Randall, 528 A.2d at 1331 (Nix, C.J., dissenting); United States v. Norton, 26 F.3d 240, 244-45 (1st Cir. 1994); and United States v. Williams-Ogletree, No. 11 CR 203-3, 2013 WL 66207, at *7 (N.D. Ill. Jan. 4, 2013)). Additionally, the panel held that the trial court "understated" the "extreme" prejudicial effect of appellee's single 1998 conviction in light of the similarities with the charges that appellee was facing. According to the panel, "[i]t [wa]s hard to imagine how the jury would not have inferred that [appellee] had a propensity to commit the instant offenses because of his prior conviction." Super. Ct. Op. at 14. So then, because, in the panel's view, this "extreme" prejudicial effect outweighed the probative value of the prior *crimen falsi*, the panel concluded that its admission was an abuse of the trial court's discretion.

The panel's idiosyncratic approach is not supported by Pennsylvania law. The prejudicial effect of a prior conviction is not assessed in a vacuum; an appellate court should not only consider the purpose for which the evidence is introduced, but the actual use made of the evidence and also the jury instructions that accompany the admission of evidence. See Commonwealth v. LaCava, 666 A.2d 221, 229 (Pa. 1995). Here, the jury was specifically instructed that the prior conviction was not evidence of appellee's guilt and that the jury was required to consider it for the limited purpose of judging the credibility and weight of the testimony given by appellee as a witness in this trial. There is no reason to believe that the jury did not follow the trial court's instruction. See id. at 228 (jury presumed to follow trial court's instruction regarding limited purpose of evidence).

Furthermore, the panel appears to have created a new standard for admitting evidence of a prior conviction for impeachment purposes with respect to the youth of the

defendant, which is at odds with the controlling rule of evidence. Under Evidence Rule 609(d), in a criminal case, even evidence of an adjudication of juvenile delinquency "may be used to impeach the credibility of a witness if conviction of the offense would be admissible to attack the credibility of an adult." Consistently, there is no support in Pennsylvania law for the proposition that the probative value of a young adult offender's conviction "is small." Indeed, former Chief Justice Nix did not comment about the intrinsic probative value of a youthful conviction in his Randall dissent, but rather, what he believed was the arbitrary nature of the Randall majority's *per se* rule of admissibility with a 10-year cutoff; the dissent's examples spoke about the relevance of the prior conviction in several different scenarios. 528 A.2d at 1330-31. The remaining cases cited by the Superior Court panel are from other jurisdictions, as the Commonwealth accurately notes. The Superior Court's decision on this point appears to reflect -- and to greatly expand upon -- the U.S. Supreme Court's recent focus on youth as an element diminishing culpability in criminal matters. See, e.g., Miller v. Alabama, 132 S. Ct. 2455 (2012) (Eighth Amendment prohibits mandatory sentence of life without parole for juvenile murderers); and Graham v. Florida, 560 U.S. 48 (2010) (Eighth Amendment prohibits sentence of life without possibility of parole for juvenile convicted of non-homicide offense).

This appeal, however, poses a non-constitutional issue involving settled principles of Pennsylvania evidentiary law, and a trial court's exercise of discretion under those principles. There was no need, or warrant, for the Superior Court to seek to innovate a novel standard for admitting a prior conviction for impeachment purposes, particularly one based on federal sources, since the applicable Pennsylvania Rule of Evidence and the corresponding federal rule, F.R.E. Rule 609, are quite distinct. Thus, while subsection (d)(2) of the corresponding federal rule limits the admissibility of

juvenile adjudications to those of witnesses other than the defendant, subsection (d) of the Pennsylvania rule, as stated, contains no such limitation, but specifically allows the use of juvenile adjudications for impeachment purposes. Thus under Pennsylvania law, prior adult convictions of crimes of dishonesty remain fair game for impeachment in appropriate circumstances.

The Superior Court's decision is reversed and the case is remanded to that court to decide appellee's remaining evidentiary issue. Jurisdiction is relinquished.

Former Justice McCaffery did not participate in the decision of this case.

Messrs. Justice Eakin and Baer, Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Justice Saylor files a dissenting opinion.