J-S39002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDDIE BELL | |
| Appellant | No. 1235 EDA 2014 |

Appeal from the Judgment of Sentence March 19, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003381-2013
MC-51-CR-0021778-2012

BEFORE: BOWES, OTT AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 07, 2015**

Eddie Bell appeals from the judgment of sentence of life imprisonment. We affirm.

On March 19, 2014, a jury found Appellant guilty of first-degree murder, possession of an instrument of crime, and two violations of the Uniform Firearms Act. The convictions were premised upon the following events. At approximately 5:30 a.m. on May 27, 2012, the decedent, Sirmar Morris, and Dante Hines, Appellant's brother, had an argument at an after-hours establishment in Philadelphia. Mr. Morris purportedly displayed a gun during the incident. Hines then went to Appellant's house, where Hines had arranged to obtain a ride to his own home from Will Duncan. Hines told Appellant about the argument with Mr. Morris.

Appellant, who had a gun, informed Hines that he was going to take care of the situation. Mr. Duncan, accompanied by Martinez Green, arrived at Appellant's home in a tan minivan. Appellant and Hines entered the van. As Duncan was driving down 23rd Street, Hines saw Mr. Morris walking down the same street and pointed him out to Appellant. Duncan stopped the vehicle so that Appellant could exit it. Hines then heard shots, and Appellant came running back toward the van. Duncan drove away.

At that time, Philadelphia Police Officer Thomas Bimble was in his cruiser just outside the police headquarters located about one block away from the crime. He heard the gunshots fired by Appellant and immediately drove to the location of the shooting. Officer Bimble saw Duncan's van speeding from the scene, started to follow it, and broadcasted his location to other police units. The van continued driving at a high rate of speed but was spied by other officers. Appellant was soon apprehended by Philadelphia Police Sergeant Joseph Musumeci and Philadelphia Police Officer Michael Coston. A 9 mm Smith & Wesson handgun was found near the location of Appellant's detention. Appellant's DNA was on the weapon. The other individuals in Duncan's van were apprehended by other Philadelphia police officers.

Mr. Morris was shot with a 9 mm Smith & Wesson handgun; three bullets entered the victim. Mr. Morris also sustained shrapnel gunshot wounds, and a graze wound at the top of his left shoulder. Appellant shot at

the victim a total of eight times. Mr. Morris was transported by ambulance to the Hospital of the University of Pennsylvania, where he was pronounced dead. The bullet that killed the victim entered the right side of his chest, and it traveled through his liver, aorta, and both lungs.

Immediately after the jury rendered its verdict, the trial court imposed a sentence of life imprisonment, and this appeal followed. Appellant presents three allegations:

> A. Was the evidence insufficient to sustain Appellant's conviction and judgment of sentence for first degree murder since the evidence failed to establish that there was a willful, deliberate, and premeditated killing with malice in this case?
>
> B. Was the evidence insufficient to sustain Appellant's conviction and judgment of sentence for first degree murder since his intoxication prevented him from having the specific intent to kill?
>
> C. Did the trial court err in permitting Police Officer Bimble to testify regarding the sound of the gunshots he heard and stating an opinion regarding whether it sounded like one gun or more than one gun, since said testimony was speculative, unreliable, and there was no foundation for his expertise regarding gunshot sounds and the Commonwealth gave no advance notice that an expert would be called regarding gunshot sounds?

Appellant's brief at 2.

Our standard of review for Appellant's first two contentions, which pertain to the sufficiency of the evidence, is well-settled:

> Whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the

facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa.Super. 2015) (citation omitted).

Appellant challenges his first-degree murder conviction. "There are three elements of first-degree murder: (i) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. 18 Pa.C.S. § 2502(a)." ***Commonwealth v. Jordan***, 65 A.3d 318, 323 (Pa. 2013). Appellant refutes that there was evidence of the third element, which mandates that the killing be "willful, deliberate and premeditated[.]" ***Id***. (citing 18 Pa.C.S. § 2502(a) and (d)).

It is a well-established principle in this Commonwealth that, "Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body." ***Id***. Additionally, the question of whether the defendant "formed the specific intent to kill is a question of fact to be determined by the jury." ***Id***. Finally, the chest, where Appellant shot his victim, is considered a vital body part. ***Commonwealth v. Johnson***, 42 A.3d 1017 (Pa. 2012). Thus, the evidence was sufficient to

sustain the jury's finding that Appellant had the specific intent to kill Mr. Morris since Appellant used a deadly weapon on a vital body part of the victim.

Appellant claims that he did not have the specific intent to kill "because he reasonably believed Mr. Morris was armed." Appellant's brief at 8. As noted, Hines indicated that Mr. Morris displayed a gun during their confrontation. Even though no weapon was recovered on or near Mr. Morris, Appellant notes that a cell phone was discovered in Mr. Morris' hand. He posits that, if [he] "believed that Samir Morris had a gun and was about to shoot him, then he did not act willfully, deliberately, and with premeditation, even if his belief was mistaken." Appellant's brief at 8.

Appellant's position pertains to self-defense, which was inapplicable herein. Appellant did not act to defend himself. To the contrary, Appellant declared that he was going to resolve the situation between Hines and Mr. Morris, armed himself, and entered a vehicle to hunt for the victim. After Appellant observed the victim walking down the street, Appellant exited the van and gunned him down. The victim was not in possession of a gun and fired no shots. Appellant's argument, which is that he acted in self-defense, is wholly unsupported by the events in question. The evidence establishes specific intent to kill in that Appellant searched out Mr. Morris armed with his weapon and then he used that gun to shoot the victim in the chest.

Appellant next claims that the evidence was insufficient to support that he had the specific intent to kill due to his intoxicated state. In this respect, Appellant's girlfriend testified that, prior to the shooting, Appellant had been drinking, took some Xanax, and imbibed marijuana. Appellant suggests that the jury was required to credit this proof that he had a diminished capacity and was unable to form the specific intent to kill based on his ingestion of drugs and alcohol.[1]

Our Supreme Court has noted that, "The defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill." *Commonwealth v. Sanchez*, 82 A.3d 943, 977 (Pa. 2013). To establish that defense, the evidence must demonstrate that the "the defendant was overwhelmed or overpowered by alcohol or drugs to the point of losing his or her faculties or sensibilities." *Id*.

Herein, Quemecca Johnson, Appellant's girlfriend, told that jury that, in the hours before the shooting, Appellant was smoking marijuana and drinking alcohol and that he had taken two or three Xanax. There was, however, no evidence of excessive consumption of any substance. Instead,

---

[1] The trial court instructed the jury on the diminished capacity defense based upon voluntary intoxication. N.T. Trial, 3/18/14, at 117.

Ms. Johnson reported that Appellant had "a few drinks mixed with some juice" and that he "was smoking a little." N.T. Trial, 3/18/14, at 34. She also said that Appellant regularly took Xanax and that on May 27, 2012, he took a few. On cross-examination, the witness admitted that Appellant was not "actually drunk. He seemed a little different." *Id*. at 41. Ms. Johnson explained that he "wasn't acting really weird. . . . It's almost like when you drink a little, you could kind of tell. That's it." *Id*.

Additionally, Philadelphia Police Officer David Harrison testified as follows. He responded to the broadcast of the shooting and was aware of the description of the vehicle involved in it. After he observed the tan minivan, he started to follow it and saw Appellant exit that vehicle and start to walk south on 25th Street. Officer Harrison was unable to exit his car after a piece of his equipment caught on his vehicle, but other officers had arrived on the scene by that time. Officer Harrison told them to detain Appellant.

Sergeant Musumeci was involved in Appellant's apprehension. Sergeant Musumeci testified that Appellant understood and answered his questions about Appellant's name, date of birth, and where he lived. N.T. Trial, 3/13/14, at 156. Sergeant Musumeci received information about an outstanding warrant that he thought pertained to Appellant. Appellant clarified for the officer that he was not the person named in the warrant. Sergeant Musumeci testified that Appellant did not appear to be under the

influence of either alcohol or narcotics. *Id*. at 155. Rather, he was coherent, able to formulate sentences, and made sense. *Id*. at 157-58.

Herein, Appellant's own proof fell short of proving that he was overwhelmed or overpowered by alcohol or drugs to the point of losing his faculties or sensibilities at the time of the shooting. Ms. Johnson said he drank a little, smoked a little marijuana, and took a few Xanax, which he regularly consumed. Additionally, the Commonwealth presented police testimony that Appellant did not appear drunk or under the influence of drugs. The jury was free to reject Appellant's diminished capacity defense. ***Commonwealth v. Mitchell***, 902 A.2d 430 (Pa. 2006). We therefore reject this challenge to the first-degree murder conviction.

Appellant's last averment is that the trial court improperly allowed Officer Bimble to offer infirm opinion testimony. Initially, we observe, "It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." ***Commonwealth v. Hoover***, 107 A.3d 723, 729 (Pa. 2014).

The pertinent facts follow. Officer Bimble stated that he was finishing his shift and was outside police headquarters on 24th and Wolf Streets on May 27, 2012, when he heard eight to nine gunshots being fired about one block away. N.T. Trial, 3/13/14, at 112. Later at trial, Officer Bimble described the shot sequence and delineated, "I heard one successive flow of

gunshots. It was about eight or nine shots." N.T. Trial, 3/17/14, at 205. When Officer Bimble was asked if sounded like one or two guns, Appellant objected to the question and contended that it called for "speculation." *Id*. at 205-06. The Commonwealth responded that it was within the officer's knowledge, the objection was overruled, and Officer Bimble replied, "It sounded like one gun." *Id*. at 206.

Appellant complains that Officer Bimble's testimony that he heard one gun being fired was improper and speculative expert opinion testimony, that Officer Bimble was not qualified as an expert witness, and that Appellant was not given any advance notice of proposed expert witness testimony. We reject Appellant's characterization of Officer Bimble's statement that he heard a single gun being fired as improper opinion evidence. Pa.R.E. 701 states that when a witness is not testifying as an expert witness, that the witness can offer an opinion if the opinion is "rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge[.]"

***Commonwealth v. Buterbaugh***, 91 A.3d 1247 (Pa.Super. 2014), involved a driver's murder prosecution after the driver struck and killed a pedestrian. That case was a PCRA matter, and the defendant averred that trial counsel was ineffective for failing to object to the testimony of his passenger based upon the fact that it was impermissible opinion evidence.

- 9 -

The passenger had testified that, if he had been driving, he could have avoided striking the pedestrian.

We rejected the position that the passenger had offered an improper opinion. We observed that the passenger's conclusion that he could have avoided striking the pedestrian was based on events that he perceived, including the defendant's conduct. We noted that the passenger was located next to defendant in the vehicle when the incident occurred. Relying upon Pa.R.E. 701, we ruled that the passenger's opinion that he could have avoided hitting the pedestrian was not infirm opinion evidence, since it was derived from the passenger's perceptions, was within the realm of common knowledge and experience, and was not based upon specialized knowledge or training.

In this case, Officer Bimble said that he heard eight virtually continuous shots. His conclusion that they were fired from the same weapon was thus firmly premised upon his actual perception of events. Additionally, the sound of gunshots is a matter of common knowledge. Police officers are not specially trained to recognize gunshots, and there is no scientific training involved in the matter. To the contrary, lay witnesses routinely testify that they have heard a weapon being fired. Based upon Officer Bimble's description of the sequence and sound of the shots, he was permitted to report his conclusion that they were fired from the same weapon. The trial court did not abuse its discretion in permitting this testimony.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2015