J-S37032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| IVAN RODRIGUEZ | |
| Appellant | No. 2853 EDA 2014 |

Appeal from the Judgment of Sentence May 23, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015766-2009,
CP-51-CR-0015767-2009, CP-51-CR-0015770-2009,
CP-51-CR-0015772-2009, CP-51-CR-0015778-2009

BEFORE: GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 23, 2015**

Ivan Rodriguez appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County after a jury convicted him of four counts of second-degree murder,[1] and one count each of robbery,[2] conspiracy,[3] and possessing an instrument of crime.[4] After careful review, we affirm.

The trial court set forth the underlying facts as follows:

---

[1] 18 Pa.C.S. § 2502(b).

[2] 18 Pa.C.S. § 3701.

[3] 18 Pa.C.S. § 903.

[4] 18 Pa.C.S. § 907.

On June 10, 2009, [Rodriguez] and co-defendant, Donta Craddock (Craddock), devised a plan to commit a robbery in order to get money to have a Philadelphia Parking Authority wheel boot removed from Rodriguez's white Ford Excursion SUV. [Rodriguez] and Craddock used the car of Rodriguez's girlfriend's mother, a silver Pontiac Grand Prix, and went out to look for a victim. On Rising Sun Avenue in the Northeast section of . . . Philadelphia, [Rodriguez] and Craddock encountered William Sandoval (Sandoval) as he was about to get on his Yamaha motorcycle. As Sandoval put the key in the ignition of his motorcycle, [Rodriguez] and Craddock approached him from their car which was parked across the street. Craddock held a .357 magnum revolver to Sandoval's head, also moving it about his torso, and demanded that Sandoval give them his motorcycle. [Rodriguez] drove the motorcycle south towards Roosevelt Boulevard back to his home.

Rodriguez arrived at his house at 4144 N. 8th Street and parked the motorcycle outside. He knocked on his front door and when no one answered, he went around to the side of the house. He removed the air conditioner on the side of the house and climbed in through the first floor window. He went into the house, changed his shirt, and then covered up the motorcycle outside. A neighbor across the street, Gwendolyn Simpkins (Simpkins), not only witnessed all of this but had also previously seen [Rodriguez] and Craddock leave [Rodriguez's] house in the silver Pontiac Grand Prix. Simpkins called 9-1-1 and asked if there was a report concerning a motorcycle. When they told her that there was, she gave them the location of [Rodriguez's] home. Within minutes, the police arrived and [Rodriguez] fled on foot from the back of his house over the back fence. [Rodriguez] was apprehended by the police at 8th and Lycoming Streets.

Unbeknownst to [Rodriguez] and Craddock, Katrina Sherfield (Sherfield) and her boyfriend witnessed the robbery and followed Craddock. At Westford and Roosevelt Boulevard they saw Officer Matos-Wild (Matos) handling a traffic accident. Sherfield and her boyfriend pulled their car up alongside Matos and told Matos that the driver of the silver Pontiac on the street was just involved in a hijacking and that the driver was in possession of a gun. Matos got the information of the traffic accident victim and then got in his vehicle to follow the suspect. He immediately got on police radio and told them that he had a priority; there is a man with a gun and a possible carjacking. He continued to follow Craddock and asked for another police car to assist in

stopping [the] vehicle. Matos attempted to stop the vehicle driven by Craddock but Craddock fled at a high rate of speed, running a red light and hitting a van. Matos lost sight of Craddock at that point as he called for assistance to check on the van that had been struck by Craddock.

While Matos had been searching for him, Craddock struck four people at 3rd & Annsbury Streets, three juveniles and one adult. All four individuals sustained severe injuries. Along with a multitude of bones being fractured, including all of the bones in the back of the head, juvenile A.G. suffered a traumatic amputation at the hip of the right leg and was pronounced dead on the scene. Juvenile G.R. was dragged under the . . . vehicle [driven by Craddock]. G.R.'s skull was fractured in multiple places, lacerating the brain, and G.R. was pronounced dead on the scene. The other juvenile, R.S., whose leg [had] been severed but who had a pulse, was taken by police to St. Christopher's Hospital where she was pronounced dead at 7:57 p.m. The adult victim, Latoya Smith, mother of R.S., eventually succumbed to her injuries the following day, June 11, 2009, at approximately 7:30 a.m. Autopsies were performed on all four decedents, and Deputy Chief Medical Examiner Dr. Gary Collins completed the autopsies of the juveniles. The cause of death for all individuals struck was found to be multiple blunt impact injuries.

Trial Court Opinion, 3/3/15, at 2-4.

On May 23, 2012, a jury convicted Rodriguez of the above-referenced offenses and immediately thereafter, the court imposed mandatory life sentences for the second-degree murders.

Rodriguez filed a timely appeal, which was dismissed due to appointed counsel's failure to file a brief. On April 1, 2014, Rodriguez filed a *pro se* petition pursuant to the Post Conviction Relief Act.[5] He requested a **Grazier**

_____

[5] 42 Pa.C.S. §§ 9541-9546.

hearing,[6] which the court held on September 18, 2014. The court permitted Rodriguez to represent himself, and reinstated his appellate rights. Rodriguez then filed a timely notice of appeal, and a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The court filed its Rule 1925(a) opinion on March 3, 2015.

On appeal, Rodriguez raises the following issues, *verbatim*, for our review:

1. Whether the district attorney, a quasi-judicial officer, presented the Commonwealth's case unfairly, whereas the Prosecutor pressed upon the court overruled case law during the preliminary hearing to obtain a prima facie case for murder in violation of [Rodriguez's] rights to due process of law?

2. Whether the trial judge's conduct was in advocacy for the district attorney whereas [Rodriguez] was held over for trial for an offense that was overruled by other legal authority in violation of [Rodriguez's] rights to due process of law. The coordinate jurisdiction rule was used erroneously, and should not have been followed?

3. Whether the trial judge misrepresented the court record in advocacy for the district attorney when the judge altered the language in the court's record of the proceeding?

Appellant's Brief, at 4.

The first two issues are related, and accordingly, we address them together. Rodriguez argues that at his preliminary hearing, the Commonwealth drew the court's attention to ***Commonwealth v. Doris***, 135

---

[6] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

A. 313 (Pa. 1926). In *Doris*, a group of armed co-conspirators robbed a van that was transporting currency from a bank to a depository. After they seized bags of cash, one of the co-conspirators, Doris, was captured by police. The others escaped on a milk wagon and in the course of an ensuing shootout with police, an officer was killed. Doris was convicted of murder, and on appeal the Supreme Court rejected his argument that he could not be held responsible for what happened later because he was seized by officers shortly before the killing took place. The Court noted, "[t]his overlooks the fact that he joined in the common design and is responsible for the acts of each naturally to be expected to occur in carrying it out." *Id*. at 315.

Rodriguez asserts that the Commonwealth violated his right to due process because *Doris* was overruled by the Supreme Court in *Commonwealth v. Redline*, 137 A.2d 472 (Pa. 1958). As an initial matter, we note that *Redline* did not overrule *Doris*. Rather, *Redline* overruled *Commonwealth v. Thomas*, 117 A.2d 204 (Pa. 1955), a case in which the Supreme Court held that a defendant could be held liable for the death of a co-felon who was killed by a police officer. *Redline* simply discusses and distinguishes *Doris*, a case where "the death-dealing act was committed by one participating in the felony," *Redline*, 137 A.2d at 481. Accordingly, even if the issue of the Commonwealth's reliance on *Doris* were properly before us, we would find no merit to Rodriguez's argument.

However, our Supreme Court has held that "once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." *Commonwealth v. Sanchez*, 82 A.3d 943, 984 (Pa. 2013). Therefore, we conclude that Rodriguez is not entitled to review of the Commonwealth's reference to *Doris* at the preliminary hearing. For the same reason, Rodriguez's claim that the trial court erred by refusing to reverse the preliminary hearing court's finding of a prima facie case is unreviewable.

Rodriguez next argues that the trial court erred when addressing his complaint that the prosecutor violated his due process rights by "intentionally [eliciting] inflammatory testimony from the forensic pathologist containing gruesome details, with photos cumulative to the forensic pathologist['s] testimony, as to the injuries and cause of death." Rule 1925(b) Statement, 9/22/14, at IV. He further asserts that in addressing the issue, the trial court mischaracterized the pathologist's testimony.

In its Rule 1925(a) opinion, the court noted:

> [Rodriguez's] second claim lacks merit. The medical examiner's testimony explained the factors contributing to the deaths of the decedents in a clinical manner, and the testimony was necessary to establish that the deaths were the result of homicide. The Commonwealth elicited this testimony to establish [Rodriguez's] causal role in the deaths.
>
> . . .
>
> All of the decedents were autopsied; the autopsy reports were admitted into evidence and Dr. Collins testified at trial. Dr.

- 6 -

Collins' testimony and the autopsy reports established that all four decedents died of multiple blunt impact injuries consistent with being struck by a vehicle travelling at high speed. In his testimony, Dr. Collins listed the injuries sustained by each decedent respectively, and at the conclusion of the explanation of the body of each decedent, he briefly showed a black and white photo that depicted the body. The Commonwealth did not engage Dr. Collins in questioning that extended his testimony past the factual recitation of the state that the bodies were in, or his conclusion as to their causes of death. However, the information elicited was necessary to meet the Commonwealth's burden of proof. The Commonwealth did not ask Dr. Collins to repeat injuries suffered, and did not ask questions that required Dr. Collins to dwell on specific injuries. A criminal homicide trial is, by its very nature, unpleasant, and the light in which the medical examiner depicted the bodies of the decedents did not cloud an objective assessment of the guilt or innocence of [Rodriguez] by the jury.

Trial Court Opinion, 3/3/15, at 8-9 (citations omitted).

We have reviewed the testimony of Dr. Collins and conclude that there is no merit to Rodriguez's claim that the trial court "altered the language in the court's record of the proceeding." Appellant's Brief, at 4. Rather, the trial court accurately summarized Dr. Collins' testimony when addressing Rodriguez's claim that the Commonwealth elicited inflammatory statements from the medical examiner.

"It is well established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." *Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014) (citation omitted). Here, we discern no such abuse.

In his discussion of the inflammatory nature of Dr. Collins' testimony, Rodriguez refers to the post-mortem photographs of the decedents and reviews the admissibility of photographs in homicide cases. However, as the Commonwealth notes, the photographs are not included in the certified record. Commonwealth's Brief, at 8-9. In **Commonwealth v. Powell**, 956 A.2d 406 (Pa. 2008), our Supreme Court held that where an appellant challenges the admissibility of photographs and the record does not contain the photographs, we cannot assess his claim. Accordingly, Rodriguez's claim is waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/2015