J-S75004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| IMERE STINSON | |
| Appellant | No. 3273 EDA 2015 |

Appeal from the Judgment of Sentence May 15, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004941-2014

BEFORE:  BOWES, MOULTON AND MUSMANNO JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 09, 2017**

Imere Stinson appeals from the judgment of sentence of five to ten years imprisonment that the court imposed after a jury convicted Appellant of robbery, intimidation of a victim, and possession of an instrument of crime.  We affirm.

The following facts gave rise to the convictions in question.  At approximately 11:30 a.m. on February 20, 2014, victim Gary Johnson was in a public housing apartment complex in Philadelphia seeking to purchase crack cocaine.  As Mr. Johnson was riding the elevator, it stopped and Appellant entered it.  Mr. Johnson recognized Appellant as a resident of the building.  Appellant then displayed a large stick with what appeared to have

a hook attached to it. Appellant showed the weapon to the victim and told him, "You know what it is." N.T. Trial, 3/31/15 at 55 -56.

Fearful of being struck with the stick, Mr. Johnson stood still as Appellant rummaged through his pockets and stole fifteen dollars and a cell phone. Appellant exited the elevator and went to his apartment while Mr. Johnson immediately reported the incident to Philadelphia Housing Authority Police Sergeant Carlo McKinnie, who was on duty in the apartment complex. Police were summoned, and they went to Appellant's apartment. After the door was opened by a woman, Mr. Johnson became frightened and said Appellant had not committed the robbery.

Mr. Johnson, the police, and Appellant took an elevator to the ground floor, where police were interviewing people about the incident. The victim, outside of police hearing, asked Appellant to return his phone and money and, in exchange, the victim promised that he would not press charges. Appellant replied, "You ain't getting sh_ because you brought the cops to my house." N.T. Trial, 3/31/15, at 58. Appellant was approached by two friends, and he told them, "If I get locked up, drop him," referring to Mr. Johnson. *Id*. When Mr. Johnson asked if he was being threatened, Appellant replied, "Yeah." *Id*. Mr. Johnson understood "drop him" meant to shoot him or kill him. *Id*. at 59. The victim asked the police for a ride home, and, in the patrol car, identified Appellant as his assailant. Police

detained Appellant inside the apartment complex, Mr. Johnson returned, and he positively identified Appellant as the perpetrator of the robbery.

Appellant was arrested and incarcerated. During a recorded telephone call with his fiancé, Appellant made the following incriminating remarks, "[Y]ou told me Imere don't go out there, don't go do that, no stay in the house. But nah, I was you know what I mean. You know. [A] dumbass. Babe I know you don't want to hear this at the end of the day but you just got to accept this for what it is, I messed up, everybody makes mistakes." Commonwealth Exhibits C-12, C -13. The Commonwealth also introduced evidence that Appellant's brother warned Mr. Johnson not to testify against Appellant.

Based upon this evidence, Appellant was convicted of the enumerated crimes. This appeal followed imposition of the judgment of sentence. Appellant raises these issues for our review:

A. Were intimidating statements allegedly made to the complainant by the Appellant's brother improperly admitted into evidence?

B. Did the prosecutor's remarks during his closing statement constitute prosecutorial misconduct where the remarks were inflammatory, improperly bolstered the complainant's testimony, shifted the burden of proof, and commented on facts not in evidence?

Appellant's brief at 2.

Appellant's first complaint is that the trial court incorrectly allowed into evidence statements that Appellant's brother made to Mr. Johnson warning Mr. Johnson not to come to the courthouse to testify.

> It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. Thus, the Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Further, discretion is abused when the law is either overridden or misapplied.

*Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014) (citations and quotation marks omitted).

Our Supreme Court has noted that, "Threats by third persons against public officers or witnesses are not relevant unless it is shown that the defendant is linked in some way to the making of the threats." *Commonwealth v. Ragan*, 645 A.2d 811, 824 (Pa. 1994). In the present case, the trial court outlined that it admitted the evidence since

> there was a compelling circumstantial link between defendant and his brother's threats. On the day of the robbery, defendant personally threatened Johnson by stating to defendant's friends, in the presence of Johnson, "If I get locked up, drop him." Nevertheless, Johnson identified defendant as the robber and defendant was "locked up." When defendant's brother, a member of defendant's immediate family, subsequently warned Johnson not to come to court, one could certainly infer that the message was a follow-up to defendant's original threat, and was done at least with the acquiescence of defendant.

- 4 -

Trial Court Opinion, 12/22/15, at 13.

As evidenced by its correct articulation of the law and application of the pertinent facts to that precedent, the trial court did not abuse its discretion in permitting introduction of the warning made to Mr. Johnson not to prosecute the matter by appearing to testify against Appellant.

Appellant's second position is that the prosecutor impermissibly bolstered Mr. Johnson's testimony when he indicated that he was placing his life at risk by testifying against Appellant at trial. Our standard of review in this context follows:

> [A]ny challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. . . . [I]t is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Fletcher*, 580 Pa. 403, 434–35, 861 A.2d 898, 916 (2004) (quotation and quotation marks omitted). . . . Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. *Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220 (2006); *Commonwealth v. Holley*, 945 A.2d 241 (Pa.Super. 2008). Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation. *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501 (2005).

*Commonwealth v. Scott*, 146 A.3d 775, 778–79 (Pa.Super. 2016),

The relevant facts are as follows. During closing remarks, Appellant maintained that Mr. Johnson's testimony was incredible since Mr. Johnson conceded that his story was such that his own sister would not have believed him. N.T. Trial, 3/31/15, at 128-29. The assistant district attorney responded

> [Assistant District Attorney]: [Defense counsel] has brought up, and as he should, [Mr. Johnson] testified, well, his own sister wouldn't believe him. Let me explain something. I've got a brother who is kind of a dope and if he came to me and was like, oh, this happened, an unbelievable story, or I got robbed of the cell phone that you lent me, I would go, you know what, he's probably not telling me the truth. But when he put his life on the line, when he suffered through people telling him I'm going to kill you -
>
> [Defense Counsel]: Objection.
>
> The Court: What's the objection?
>
> [Defense Counsel]: Put his life on the line by coming into this courtroom, which is sheriffs and police officers.
>
> The Court: All right.
>
> [Assistant District Attorney] I can rephrase.
>
> The Court: It's a little bit of hyperbole. Why don't you rephrase your example a little bit.
>
> [Assistant District Attorney]: When he subjected himself to further threats on his life, when he took on that risk again and again and again, it dramatically changes the equation.

*Id*. at 160-61.

Thus, in this portion of its closing remarks, the Commonwealth was countering Appellant's position that Mr. Johnson was incredible.

- 6 -

Additionally, the assistant district attorney's comments were supported by the evidence that Appellant told his friends to kill Mr. Johnson if he prosecuted the robbery and that Mr. Johnson was warned against testifying by Appellant's brother. As the remarks were fair response and supported by the evidence, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2017