J-S71028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| EDWARD LEONARD RIVERA JR. | : | |
| Appellant | : | No. 2050 EDA 2019 |

Appeal from the Judgment of Sentence June 21, 2019
In the Court of Common Pleas of Carbon County Criminal Division at
No(s):  CP-13-CR-0000917-2015

BEFORE:  BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 08, 2020**

Edward Leonard Rivera Jr. (Appellant) appeals from the judgment of sentence imposed after he pled guilty to receiving stolen property.[1]  Upon review, we affirm.

Appellant raises one issue on appeal:

WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW AND/OR ABUSE OF DISCRETION BY DENYING APPELLANT EDWARD RIVERA, JR.'S PRE-SENTENCE MOTION TO WITHDRAW HIS GUILTY PLEA, BY FINDING PREJUDICE TO THE COMMONWEALTH DUE TO THE DEATH OF AN UNINVOLVED PURPORTED WITNESS WHERE THE DECEASED FAILED TO MAKE A WRITTEN STATEMENT, REPORT THE CRIME, OR OTHERWISE AVAIL HIMSELF TO AID THE COMMONWEALTH'S INVESTIGATION?

Appellant's Brief at 9.

The trial court summarized the relevant facts and procedure as follows:

_____

[1] 18 Pa.C.S.A. § 3925(a).

On or about August 16, 2016, [Appellant] entered a guilty plea to one count of Receiving Stolen Property. . . . On June 30, 2017, subsequent to the withdrawal of his then-counsel, [Appellant's] current counsel, Joseph V. Sebelin, Jr. Esq., filed a Motion to Withdraw Guilty Plea which this Court denied upon [Appellant's] failure to appear at a scheduled August 28, 2017 hearing thereupon.

Following a period of time in which [Appellant] had been incarcerated in Schuylkill County, this [c]ourt scheduled [Appellant's] sentencing for May 18, 2018. [Appellant] filed his Second Motion to Withdraw Guilty Plea on May 17, 2018.

This [c]ourt presided over a hearing on [Appellant's] Second Motion to Withdraw Guilty Plea on November 6, 2018. At the November 6, 2018 [hearing], [Appellant] maintained his innocence as to each pending charge. In addition to presenting the testimony of Amy Burns, Felicia Urbanski, and Officer Joshua Tom, the Commonwealth contended that it had been prejudiced by the death of Brian Brossman ("Mr. Brossman"), an individual contended by the Commonwealth to be a material witness and who died on November 12, 2016, approximately three months after [Appellant's] August 16, 2016 guilty plea.

This [c]ourt denied [Appellant's] Second Motion to Withdraw Guilty Plea through its June 11, 2019 Order of Court. Subsequently, this [c]ourt sentenced [Appellant] on June 21, 2019; [Appellant] thereafter, on July 15, 2019, filed this timely appeal. This [c]ourt then directed [Appellant] to file a concise statement of matters complained of on appeal by Order of Court dated July 16, 2019 and filed on July 17, 2019. On July 29, 2019, [Appellant] filed his "1925(b) Statement of Matters Complained of on Appeal" ("[Appellant's] 1925(b) Statement of Matters Complained of on Appeal").

Trial Court Opinion, 9/13/19, at 2-3.

In reviewing Appellant's claim, we begin with a summary of the applicable law:

"We review a trial court's ruling on a [pre]sentence motion to withdraw a guilty plea for an abuse of discretion." *Commonwealth v. Islas*, 156 A.3d 1185, 1187 (Pa. Super.

- 2 -

2017) (citation omitted).  Pennsylvania Rule of Criminal Procedure 591(A) provides that, "At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty."  Pa.R.Crim.P. 591(A).

"Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing should be liberally allowed." ***Commonwealth v. Kpou***, 153 A.3d 1020, 1022 (Pa. Super. 2016) (cleaned up). "In determining whether to grant a presentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice." ***Commonwealth v. Elia***, 83 A.3d 254, 262 (Pa. Super. 2013) (cleaned up).  Therefore, if the defendant provides a fair and just reason for wishing to withdraw his or her plea, the trial court should grant it unless it would substantially prejudice the Commonwealth. ***Commonwealth v. Carrasquillo***, 631 Pa. 692, 115 A.3d 1284, 1287 (2015) (citation omitted).

***Commonwealth v. Williams***, 198 A.3d 1181, 1184 (Pa. Super. 2018).

Appellant agrees that the trial court "properly found that Appellant raised a 'fair and just' defense."  Appellant's Brief at 14, 20.[2]  ***See also*** Trial Court Opinion, 9/13/19, at 7 (finding that Appellant provided the court "with more than just a bare assertion of innocence.").  However, Appellant maintains that the trial court erred in finding that the Commonwealth would be prejudiced by the withdrawal of Appellant's plea because of the

---

[2] Appellant maintains he is innocent because the victim "gave the television to Appellant as collateral for an unpaid obligation."  Appellant's Brief at 10, 12.

- 3 -

unavailability of "a material Commonwealth witness," Brian Brossman, who died three months after Appellant entered his plea.[3] Appellant asserts "the Commonwealth will not be prejudiced by either [Appellant's] withdrawal of his guilty plea or by having to go to trial without a plea or by having to go to trial without a witness who passed away." *See* Trial Court Opinion, 9/13/19, at 4-5. Appellant claims the Commonwealth failed to demonstrate "substantial prejudice" as required by *Commonwealth v. Forbes*, 299 A.2d 268, 271 (Pa. 1973) and *Commonwealth v. Carrasquillo*, 115 A.3d 1284 (Pa. 2015), and avers the Commonwealth "would be in no worse position for this case due to the death of [the witness]." Appellant's Brief at 15. Appellant specifically argues:

> Appellant disputes that Brossman's death constitutes a "substantial prejudice" to the Commonwealth. Appellant Brossman was not a key "witness" or otherwise willing to aid the Commonwealth in the case against Appellant. Mr. Brossman was not a witness to the alleged removal of items as he was not at the house. He did not call the police in advance of the alleged burglary. Throughout the investigation, Mr. Brossman did not avail himself to aid the prosecution. He made no written statement to the police. In fact, he avoided further interaction with the police during their investigation. There is simply no evidence that he ever testified or gave a sworn statement on this matter. In short, other than an alleged oral statement, Brossman was a virtual non-entity in this case.

Appellant's Brief at 14.

In the alternative, Appellant argues:

---

[3] It is undisputed that Brian Brossman was unavailable because he died on November 12, 2016. *See* N.T., 11/6/18, at 16; Commonwealth Exhibit 2.

> Even if Mr. Brossman was the only witness that could substantiate the conspiracy charge, Mr. Brossman had previously pleaded to a *crimen falsi* offense (False Reports 18 Pa. C.S. 4906), and thus, his word was questionable. His plea to a *crimen falsi* renders the Commonwealth's reliance upon his "statement" and "credible" testimony are tenuous at best [*sic*]. There is simply no reason to believe that he would have appeared to testify for the Commonwealth, that he would have testified against the Appellant, and that his testimony would have been reliable.

Appellant's Brief at 15.

Contrary to both Appellant and the trial court, the Commonwealth argues that Appellant did not meet the first prong of **Carrasquillo** and did not raise a plausible defense of innocence. The Commonwealth states that even if the court accepted Appellant's explanation regarding the television, "it still does not follow why other items from the household were taken." Commonwealth Brief at 12. With regard to the second prong, the Commonwealth states that Mr. Brossman was a "material" and "independent" witness, who would have testified to the necessary elements of the four crimes with which Appellant was charged, and corroborate the testimony the victim, Amy Burns. **Id.** at 9, 12-13. The Commonwealth asserts that it would be substantially prejudiced by Mr. Brossman's unavailability because although Mr. Brossman is not the only Commonwealth witness, "the other witnesses would not be as strong and compelling," because "Mr. Brossman had nothing to do with the theft." **Id.** at 14.

Upon review, we discern no abuse of discretion in the trial court's determination that Appellant demonstrated a fair and just reason for the

withdrawal of his plea. *See Commonwealth v. Islas*, 156 A.3d at 1292.

Noting the "policy of liberality" articulated in *Carrasquillo*, the trial court

concluded that Appellant provided the court with "more than just a bare

assertion of innocence." Trial Court Opinion, 9/13/19, at 7. The trial court

referenced Appellant's post-hearing memorandum in support of his motion to

withdraw plea, in which he reiterated that he did not steal the television, and

claimed that it was given to him by Ms. Burns. *See* Memorandum in Support

of Guilty Plea, 1/24/19, at 7. Appellant further stated that he:

> has affirmed his innocence on multiple occasions – in his initial
> statement to the [police] officer, in multiple statements to th[e]
> honorable [trial] court, and lastly, in his testimony at the hearing
> on his motion to withdraw his plea.

*Id.* at 8.

Upon review, and mindful that "the proper inquiry on consideration of

such a withdrawal motion is whether the accused has made some colorable

demonstration, under the circumstances," we do not disturb the trial court's

finding that Appellant demonstrated a fair and just reason in support of his

motion to withdraw guilty plea. *See Commonwealth v. Carrasquillo*, 115

A.3d at 1292. We therefore turn to the second consideration of whether the

Commonwealth would be substantially prejudiced by withdrawal of the plea.

*Id.* (citing *Commonwealth v. Forbes*, 299 A.2d 268,271 (Pa. 1973)).

Again, we are not persuaded that the trial court abused its discretion.

The trial court stated that it found the Commonwealth's contentions of

prejudice to be "compelling and credible," while Appellant's claims regarding

- 6 -

Mr. Brossman failed to "squarely address nor refute the Commonwealth's contentions." Trial Court Opinion, 9/13/19, at 10.

The Commonwealth presented three witnesses at the hearing on Appellant's withdrawal motion. First, Lansford Police Detective Joshua Tom testified that the victim, Amy Burns, told him that she met Appellant at Mr. Brossman's house. N.T., 11/6/19, at 19. Detective Tom confirmed Appellant's statement that he was "holding" Ms. Burns' television as collateral. *Id.* at 23. However, Detective Tom stated that Mr. Brossman told Detective Tom that Appellant and two other individuals were at Mr. Brossman's home "the day of the burglary" and verbalized their "plan on burglarizing the victim's home." *Id.* at 24. Detective Tom opined that Mr. Brossman was "a mutual party, [but] didn't really want much to be involved with it." *Id.* at 25. He stated, "[Brian Brossman] **was the neutral party** between Amy Burns and [Appellant]." *Id.* (emphasis added). Detective Tom continued:

> Brian [Brossman] stated that after the three, [Appellant], [Felicia] Urbanski and [Charles] Grant came up with their plan, they executed the plan, left the house, then came back to Brian's house and wanted him to hold some of the stuff. He told them he wanted no part of it and told them to leave.

*Id.*

Detective Tom stated that Mr. Brossman "did not give a written statement. This was all during a [verbal] interview." *Id.* at 26. On cross-examination, Detective Tom testified that he never offered Mr. Brossman the opportunity to be recorded, and as to a written statement, Mr. Brossman "was

- 7 -

not one for writing things down." *Id.* at 49. The detective averred that Mr. Brossman "just overheard them that they were planning on burglarizing the house. That was [*sic*] his words." *Id.* at 50. He repeated: "He told me that they were all in the living room planning on breaking in and burglarizing Amy Burns' house." *Id.* Defense counsel cross-examined Detective Tom as follows:

> Q. Okay. So is it safe to say that Mr. Brossman told you, he doesn't know what happened that morning one way or the other, or that day at Amy Burns' house, fair enough?
>
> A. The only thing I can testify to is that he overheard them planning on breaking into the house. They left and they returned with a bunch of stuff asking to keep it at Brian's house and he said; no, you've got to leave.
>
> Q. The stuff, the bunch of stuff, did he provide you an inventory, much like Mr. Burns did?
>
> A. No, he did not.
>
> Q. He didn't write anything down?
>
> A. He didn't write anything down. He didn't want to know nothing about it. They offered; can we keep this stuff here? And he said; no, you've got to leave.
>
> Q. Okay.
>
> A. And they left. He didn't want no part of their plan.
>
> Q. But he wasn't present one way or the other when the stuff was taken from Amy Burns' house?
>
> A. No, not that I'm aware of. He did not say that.
>
> Q. He tells you that he overheard their statement?
>
> [COMMONWEALTH]: Asked and answered.

[DEFENSE COUNSEL]: That's what this witness said. I didn't ask – I asked him what he heard, but I want to get—

THE COURT: You just asked him.

[DEFENSE COUNSEL]: So he overhears it. Did he tell you how far away he was standing when he overheard it?

A. No.

Q. Did he tell you that he was part of the conversation when he overheard it?

A. Nope.

Q. So according – he didn't tell you or give you any more details other than he overheard them planning the burglary?

A. He said that they were sitting in the room and they were talking about breaking in and burglarizing Amy Burns' house.

N.T., 11/6/18, at 52-53.

Prior to calling the next witness, Felicia Urbanski, the Commonwealth addressed the trial court:

I had anticipated having Felicia Urbanski here to testify similarly to Mr. Brossman since she apparently was there. [But] in my discussion with her, Ms. Urbanski will be testifying contrary to Mr. Brossman.

The reason why I bring that up, Your Honor, is **if she would have been able to testify in accordance with Mr. Brossman, then I would have been able to interchange her with Mr. Brossman for trial**. At this point in time, I have a witness who will not be testifying in accordance with Mr. Brossman.

*Id.* at 66 (emphasis added).

As indicated by the Commonwealth, Ms. Urbanski's testimony was contrary to Detective Tom's account of what Mr. Brossman said. Ms. Urbanski testified:

> We were at Brian's house that morning and Amy – it was almost around afternoon time and she was supposed to get money from her husband. So she was going to get money from her husband to give [Appellant]. There would be no reason to burglarize her house. She was gone for about an hour. [Appellant] left Brian's house. [Appellant] came back to Brian's house with the TV in the back of the car.

N.T., 11/6/18, at 73.

After Ms. Urbanski, the Commonwealth called Amy Burns, who testified unequivocally that her home was burglarized. Although Ms. Burns admitted to being "fronted" drugs from Appellant, she denied "any arrangements" with Appellant to provide personal items as collateral. *Id.* at 79-93. For example, Ms. Burns testified, "If I wanted to give [Appellant] the television for collateral, I could have done it myself. I wouldn't have told a stranger to go into my home." *Id.* at 89. She said she "never told [Appellant] to go into my home without me being present." *Id.* She added that she knew Felicia Urbanski, and "Lansford is a small town. Everyone knows where my house is." *Id.*

On this record — *i.e.*, the testimony presented at the hearing on Appellant's motion to withdraw guilty plea — we discern no abuse of discretion by the trial court in determining that the Commonwealth would be substantially prejudiced by Appellant's withdrawal of his plea. We have explained that a defendant is:

> not entitled to withdraw his plea if, at the time of the motion, such withdrawal would have "substantially prejudiced" the Commonwealth. . . .

***

> In assessing a claim of substantial prejudice, we focus on whether there was a material change in circumstances between a defendant's guilty plea and his motion to withdraw. In other words, the question before us is whether, at the time [the defendant] moved to withdraw his plea, the prosecution would have been substantially prejudiced by being required to try its case.

*Commonwealth v. Islas*, 156 A.3d 1185, 1192-94 (Pa. Super. 2017) (citations omitted and footnote).

Here, Appellant filed his motion to withdraw guilty plea on May 17, 2018, after the Commonwealth's witness, Mr. Brossman, had died. Thus, there was a material change in circumstances. Citing **Commonwealth v. Scher,** 803 A.2d 1204 (Pa. 2002), Appellant states that "[t]he Pennsylvania Supreme court has held that the death of a potential witness does not automatically constitute prejudice." Appellant's Brief at 23. However, **Scher** does not involve a guilty plea; rather, the defendant in **Scher** made a claim regarding his due process rights relative to a 20-year delay in being charged with murder. We are more persuaded by the cases Appellant cites which involve a defendant's desire to withdraw a pre-sentence plea. Appellant recognizes:

> It is settled law that "prejudice," in the withdrawal of a guilty plea context, requires a showing that, due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled. **Commonwealth v. Kirsch**, 930 A.2d 1282, 1286 (Pa. Super. 2007). **See also Commonwealth v. Prendes**, 97 A.3d 337, 353 (Pa. Super. 2014). Generally speaking, "prejudice would require a showing that due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled." **Commonwealth v. Kirsch**, 930 A.2d 1282, 1286 (Pa. Super. 2007); appeal denied, 596 Pa. 727, 945 A.2d 168 (2008). When a guilty plea is

- 11 -

withdrawn before sentencing, the withdrawal usually does not substantially prejudice the Commonwealth if it simply places the parties "back in the pretrial stage of proceedings." *Id.*

Appellant's Brief at 21-22.

Upon review, we find no error in the trial court's determination that the Commonwealth would be prejudiced by Mr. Brossman's unavailability. We agree with the Commonwealth that had the trial occurred as scheduled, Mr. Brossman would be the "most strong and compelling witness," given that he was the most independent, could have testified to the elements of the crimes with which Appellant was charged, and corroborated the testimony of Amy Burns. **See** Commonwealth Brief at 13-14. To the extent Appellant argues that Mr. Brossman lacked credibility because he pled guilty to a *crimen falsi* offense, we note the trial court's discretionary authority when such matters arise at trial. **See, e.g.**, **Commonwealth v. Hoover**, 107 A.3d 723 (Pa. 2014). In sum, the evidence supports the trial court's finding that the Commonwealth would be placed in a worse position, and therefore substantially prejudiced, if Appellant was permitted to withdraw his plea.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/20