J-S36020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRENT ROBERT GETZ | : | |
| | : | |
| Appellant | : | No. 224 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 1, 2022
In the Court of Common Pleas of Carbon County Criminal Division at
No(s): CP-13-CR-0000437-2019

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 28, 2024**

Appellant Brent Robert Getz appeals from the judgment of sentence imposed following his convictions for rape of a child, involuntary sexual deviate intercourse (IDSI) with a child, aggravated indecent assault of a child, and indecent assault with a person under thirteen years of age.[1]  Appellant raises multiple claims concerning the trial court's jurisdiction, venue, and the scope of cross-examination.  Appellant also challenges the weight and sufficiency of the evidence, the trial court's sentence, and his registration requirements under the Sex Offender Registration and Notification Act (SORNA).[2]  We affirm.

_____

[1] 18 Pa.C.S. §§ 3121(c), 3123(b), 3125(b), and 3126(a)(7), respectively.

[2] *See* 42 Pa.C.S. §§ 9799.10-9799.75.

We adopt the trial court's summary of the underlying facts and procedural history. **See** Trial Ct. Op., 11/21/22, at 1-3. Briefly, Appellant was charged with multiple offenses after he sexually assaulted the minor victim multiple times between 2006 and 2010.[3] Following a jury trial in March of 2022, Appellant was convicted of the aforementioned offenses. On July 15, 2022, the trial court sentenced Appellant to an aggregate term of sixteen to thirty-two years' incarceration followed by a mandatory term of three years' probation. Appellant was also ordered to pay restitution and comply with lifetime registration requirements under SORNA. Appellant filed a motion for reconsideration raising multiple claims, including a challenge to the imposition of restitution and his registration requirements under SORNA. Ultimately, the trial court issued an order granting Appellant's motion with respect to restitution,[4] but denied the motion in all other respects.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion adopting the order and opinion disposing of Appellant's post sentence motions. Trial Ct. Op., 1/17/23, at 1-2.

---

[3] The record reflects that Appellant's birth date is October 28, 1991. **See** N.T. Trial, 3/9/22, at 64.

[4] Although the trial court concluded that Subchapter H did not apply to Appellant, the court noted that Appellant remained subject to lifetime registration under Subchapter I. **See** Trial Ct. Order, 11/21/22, at 1-3.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Did the trial court err when it did not dismiss the charges based upon the lack of adult court jurisdiction?

2. Does sentencing an individual in adult court for crimes he committed as a juvenile violate Appellant's constitutional right against cruel and unusual punishment?

3. Did the trial court err when it failed to grant Appellant a change of venue?

4. Did the trial court err when it did not allow [] Appellant to cross examine the Commonwealth's witnesses concerning recent criminal activity where there was an expectation of leniency towards the witnesses for their continued cooperation and testimony against [Appellant]?

5. Was the evidence insufficient to sustain a verdict of guilty on all counts?

6. Were the guilty verdicts on all the charges against the weight of evidence?

7. Did the trial court err when it failed to grant Appellant a new trial based upon after discovered evidence?

8. Did the trial court err when it imposed a sentence inconsistent with the Sentencing Code and/or contrary to the fundamental norms which underlie the sentencing process, in that said sentence constituted an abuse of discretion because the sentence imposed represented an unreasonable and excessive sentence which failed to consider mitigating factors?

9. Did the trial court err when it required the Appellant to register as a sex offender?

Appellant's Brief at 10-12 (some formatting altered).

**Jurisdiction**

In his first claim, Appellant argues that the trial court lacked jurisdiction over Appellant's case because he was a minor at the time that some of the offenses were committed. *Id.* at 42. Initially, Appellant acknowledges that the Juvenile Act barred him from being tried a juvenile because he was not charged with the instant offenses until after his twenty-first birthday. *Id.* at 42-44 (citing *Commonwealth v. Armolt*, 294 A.3d 364 (Pa. 2023)). However, Appellant claims that the Commonwealth had an improper motivation for the delay in prosecution, which resulted in him being charged at age twenty-eight. *Id.* at 44 (citing *Commonwealth v. Monaco*, 869 A.2d 1026 (Pa. Super. 2005) (holding that adult offenders must be tried in adult criminal court "[a]bsent some improper motivation for the delay")). Specifically, Appellant contends that although the victim reported that she had been sexually abused in 2012, the Commonwealth did not discover the abuse until 2018, and therefore "failed in their duty to fully and completely investigate the allegations which would have uncovered [Appellant's] alleged participation in these crimes by failing to adequately interview the complainant." *Id.* at 46. In a related claim, Appellant argues that sentencing him as an adult for crimes he committed as a juvenile constituted "cruel and unusual punishment." *Id.* at 47-61.

The Commonwealth responds that *Monaco*'s exception for an "improper motivation for the delay" does not apply to Appellant, as the defendant in *Monaco* committed the crimes when he was under eighteen years' old.

Commonwealth's Brief at 28. In any event, the Commonwealth argues that "any delay in charging defendant was not attributable to the Commonwealth" and "[t]here was no evidence to suggest that the Commonwealth's delay in filing charges was intentional or for an improper purpose." *Id.* at 29. In support, the Commonwealth notes that the victim's 2012 disclosure was to family members, not law enforcement, and that she did not make any allegations of abuse against Appellant to the VRC counselor. *Id.* The Commonwealth contends that it "was not responsible for the delay during the underlying police investigation because it could not react until the criminal conduct by [Appellant] was reported to law enforcement" which "did not occur until August 2018, when Officer Buoniauto resurrected the case and interviewed the victim, at which time she disclosed [Appellant's] sexual abuse . . . ." *Id.* Therefore, the Commonwealth concludes that Appellant was properly charged as an adult. *Id.* at 30.

> Our Supreme Court has explained:
>
> The question of whether [an adult defendant] fell within the jurisdiction of the juvenile court is a question of statutory interpretation we review *de novo*. The purpose of statutory interpretation is to "ascertain and effectuate the intention of the General Assembly" so as to give the statute its intended effect. 1 Pa.C.S. § 1921(a). To discern the General Assembly's intent, we first consider the language of the statute itself. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). We may "ascertain the plain meaning of a statute by ascribing to the particular words and phrases the meaning which they have acquired through their common and approved usage, and in context." *Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022). When the language clearly and unambiguously sets forth the legislative intent, we are duty-bound

to apply it and not look beyond the statutory language to ascertain its meaning. In other words, we may only resort to the rules of statutory construction . . . when there is an ambiguity in the provision.

[T]he Juvenile Act clearly and unambiguously refutes [the] appellant's position he should have been tried in a juvenile court. The General Assembly, through the Juvenile Act, conveyed limited jurisdiction to juvenile courts, the scope of which applies "exclusively to . . . [p]roceedings in which a child is alleged to be delinquent or dependent." 42 Pa.C.S. § 6303(a)(1). The Act explicitly defines a "child" as an individual who "is under the age of 18 years" or "is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years." *Id.* § 6302. Thus, the Act plainly extends juvenile jurisdiction to offenders who committed an offense while under the age of eighteen only if they are prosecuted before turning twenty-one. Because we detect no ambiguity in this definition, we must abide by the letter of the statute. *See* 1 Pa.C.S. § 1921(b).

*Armolt*, 294 A.3d at 372 (some formatting altered, footnote and some citations omitted).

Here, the trial court explained:

[S]ome crimes did occur after [Appellant] reached majority age. At trial, there was testimony that [Appellant] was born on October 28, 1991, which means he would have attained the age of eighteen (18) on October 28, 2009. While there may have been a time . . . that the victim herself may not have known if [Appellant] was ever over the age of 18 during any of these incidents, she indirectly confirmed that he was eighteen during the following colloquy on cross examination by [Appellant's] counsel:

Q: Okay. You said this stopped in 2010 or 2009, because you were nine or ten then, right?

A: It was 2010. My birthday is in May. So I had not turned ten yet.

Q: You had not turned ten yet?

A: No. My birthday was in May.

Q: So the last time was in 2010, sometime between January 1, 2010 to May 27, 2010?

A: Yes.

Trial Ct. Op., 11/21/22, at 8-9 (quoting N.T. 3/8/22 at 63-64) (footnote omitted).

Here, as noted by the trial court, Appellant committed the underlying offenses both before and after his eighteenth birthday. *Cf. Monaco*, 869 A.2d at 1027-28. However, Appellant was not criminally charged until he turned twenty-eight years' old. Consequently, Appellant was not entitled to be tried in Juvenile Court, and accordingly, the trial court did not err when it denied Appellant's motion to dismiss. *See id.* at 1029-30; *see also Armolt*, 294 A.3d at 372. Further, to the extent Appellant claims that he was subject to "cruel and unusual punishment" because he was sentenced as an adult rather than in juvenile court, we reiterate that Appellant does not meet the statutory definition of a juvenile. In any event, as this Court recently explained, defendants are "not entitled to any special sentencing benefits under the Juvenile Act." *Commonwealth v. Torres*, 303 A.3d 1058, 1064 (Pa. Super. 2023) (citation omitted). Accordingly, Appellant is not entitled to relief on this claim.

## Change of Venue

Appellant next argues that the trial court erred in denying his pre-trial motion for change of venue. Appellant's Brief at 61. In support, Appellant claims that the publicity in this case "was inherently prejudicial since

[Appellant] held the position of Chief of Police of the Weissport Borough Police Department[]" and that "[a]fter his arrest, almost every news story headline contained the words 'police chief.'" *Id.* at 63. Appellant contends that in addition to news coverage of his employment as a police chief, then-Attorney General Josh Shapiro made comments about the allegations "and neglected to [state] that the charges were merely allegations and that the defendants were presumed innocent and entitled to due process." *Id.* at 64. Appellant concludes that "[g]iven the news coverage, its extent, pervasiveness and its prejudicial nature, along with [Appellant's] position in the community, [he] could not have received a fair trial in Carbon County." *Id.* at 68.

In reviewing a trial court's ruling on whether pre-trial publicity requires a change in venue, our Supreme Court has stated that because "the trial court is in the best position to assess the atmosphere of the community and to judge the necessity of any requested change, we reverse the determination only where it constitutes an abuse of discretion." *Commonwealth v. Walter*, 119 A.3d 255, 270 (Pa. 2015) (citations and quotation marks omitted).

Our Supreme Court has further explained:

> A change in venue is compelled whenever a trial court concludes a fair and impartial jury cannot be selected from the residents of the county where the crime occurred. As a general rule, for a defendant to be entitled to a change of venue because of pretrial publicity, he or she must show that the publicity caused actual prejudice by preventing the empanelling of an impartial jury. The mere existence of pretrial publicity alone, however, does not constitute actual prejudice.

*Commonwealth v. Briggs*, 12 A.3d 291, 313 (Pa. 2011) (citations omitted).

A juror's mere knowledge about the facts of a case does not render that individual incapable of jury service. ***See Briggs***, 12 A.3d at 313. As the United States Supreme Court made clear in ***Irvin*** [***v. Dowd***, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)], "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved." ***Irvin***, 366 U.S. at 722, 81 S.Ct. 1639. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." ***Id.*** at 723, 81 S.Ct. 1639. It is therefore "sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." ***Id.*** Moreover, a demonstration of presumptive prejudice is not, in and of itself, sufficient to establish a meritorious change of venue claim. Rather, a defendant must also show the case publicity saturated the community and the cooling off period was insufficient.

***Commonwealth v. Johnson***, 289 A.3d 959, 1047 (Pa. 2023) (some citations omitted).

Nevertheless, . . . there are some instances in which pretrial publicity can be so pervasive and inflammatory [that] a defendant does not have to prove actual prejudice. Prejudice will be presumed whenever a defendant demonstrates that the pretrial publicity: (1) was sensational, inflammatory, and slanted toward conviction, rather than factual and objective; (2) revealed the defendant's prior criminal record, if any, or referred to confessions, admissions or reenactments of the crime by the defendant; or (3) derived from official police or prosecutorial reports. However, if the defendant proves the existence of one or more of these circumstances, a change of venue will still not be compelled unless the defendant also demonstrates that the presumptively prejudicial pretrial publicity was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated.

***Briggs***, 12 A.3d at 314 (citations and quotation marks omitted)

In determining whether publicity is sustained and pervasive in the community, we have looked, *inter alia*, to the time between the publicity and trial, the nature and size of the community, opinion polling, and/or the statements of actual venirepersons as elicited during the jury selection process. However, we have noted that, even where inflammatory or inculpatory publicity is disseminated in a sustained fashion and pervasively throughout the community, where that publicity is followed by a "cooling off" period sufficient to dissipate its prejudicial effect, a change of venue is unnecessary. ***Briggs***, 12 A.3d at 314.

***Walter***, 119 A.3d at 270 (some citations omitted).

Here, the trial court addressed Appellant's venue challenge as follows:

On July 15, 2019, [Appellant] filed his omnibus pre-trial motion. Included in that motion was a request for a change of venue or venire, the basis for which was that [Appellant] was a police chief in a municipality in Carbon County, a small sixth class county in this Commonwealth. [Appellant] argued that the pre-trial publicity of this case in the media precluded him from being able to pick a jury and have a fair trial. After a hearing on that motion, this court denied the request. In the footnote to that decision, this court noted:

While [Appellant] has presented some evidence of media coverage about his case, he has failed to identify how, if at all, it may have reached a jury pool which has not even been summoned, let alone how it has impacted that potential jury pool. While these numbers may not lie for their inherent relevance, they do not add up to suggest that there are not potential jurors who would not be affected by knowledge of this case. That may be an issue to raise if a fair and impartial jury cannot be empaneled at a later date.

Jury selection was scheduled for March 7, 2022. A total of 104 potential jurors were summoned, qualified and appeared for this selection. Of those 104 potential jurors, 30 were stricken for cause due to the nature of the charges and 6 were stricken because of their knowledge of the case/parties and did not feel they could be fair and impartial. Of the remainder 68 jurors, 6 others were stricken for cause for other reasons. Thus, prior to exercising preemptory challenges there were 62 potential jurors remaining. A panel of 12 principal and 2 alternates were chosen.

- 10 -

At no time during *voir dire* or after, did [Appellant] raise any claim of being unable to obtain a fair and impartial jury nor renew his request for a change of venue or venire.

Trial Ct. Op., 11/21/22, at 24-25 (footnotes omitted and some formatting altered).

Following our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's motion to change venue. ***See Walter***, 119 A.3d 270. Although Appellant provided the trial court with some evidence of media coverage about the case, "[t]he mere existence of pretrial publicity alone . . . does not constitute actual prejudice." ***See Briggs***, 12 A.3d at 313. Additionally, Appellant did not demonstrate that "the publicity caused actual prejudice by preventing the empanelling of an impartial jury." ***See id.*** (citations omitted). Therefore, Appellant is not entitled to relief on this claim.

### Scope of Cross-Examination

Appellant argues that the trial court erred by granting the Commonwealth's motion *in limine* and precluding him from cross-examining the victim and the victim's mother about their recent criminal activity. Appellant's Brief at 69. In support, Appellant argues that "there was an expectation of leniency towards the witnesses for their continued cooperation and testimony against [] Appellant." *Id.* at 69-70.

Our Supreme Court summarized the applicable standard of review as follows:

When reviewing the denial of a motion *in limine*, this Court applies an evidentiary abuse of discretion standard of review. . . . It is well-established that the admissibility of evidence is within the

discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. Thus, the Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Further, discretion is abused when the law is either overridden or misapplied.

*Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014) (citations and quotation marks omitted).

Pennsylvania Rule of Evidence 611(b) addresses the scope of cross-examination. *See* Pa.R.E. 611(b). In criminal cases, cross-examination "should be limited to the subject matter of the direct examination and matters affecting credibility, however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." *Id.* "The scope of cross-examination is within the trial court's discretion, and this Court cannot disturb the trial court's determinations absent a clear abuse of discretion or an error of law." *Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011) (citation omitted).

"Under the Sixth Amendment to the United States Constitution, an accused has the right to be confronted with the witnesses against him. The main and essential purpose of confrontation is to **secure for the opponent the opportunity of cross-examination**." *Commonwealth v. Paddy*, 15 A.3d 431, 447 (Pa. 2011) (citation and quotation marks omitted, emphasis in original).

- 12 -

[W]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. [As the United States Supreme Court has observed], the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Commonwealth v. Bozyk*, 987 A.2d 753, 756-57 (Pa. Super. 2009)

(citations, quotation marks, and emphasis omitted).

Here, the trial court explained:

[Appellant] takes issue with the court granting the Commonwealth's motion *in limine* prohibiting [Appellant] from cross-examining both the victim and her mother, Melissa Matsick, regarding uncharged conduct . . . and placement into the Accelerated Rehabilitative Disposition Program. . . .

As noted by the Commonwealth in its motion, Pa.R.E. 607(b) allows a witness's credibility to be impeached by any relevant evidence, except as otherwise provided by statutes or the Rules of Evidence. The evidence which the Commonwealth sought to preclude and [Appellant] sought to place into the record, involved the ARD disposition or criminal conduct of Matsick and the uncharged conduct of the victim. [Appellant] ultimately argued that the purpose for which he sought to elicit this testimony was to show that either or both were testifying against him in exchange for leniency and/or a more favorable outcome in regards to their respective cases. At the hearing this court held on these issues, both witnesses testified that they did not expect anything with regard to any charged or uncharged conduct in exchange for testifying against [Appellant]. Accordingly, this court granted the

- 13 -

Commonwealth's motion and precluded [Appellant] from cross-examining these witnesses on those issues and rightfully so.

Trial Ct. Op., 11/21/22, at 25-26 (some formatting altered).

Following our review of the record, we conclude that Appellant is not entitled to relief. Both witnesses explained their motivation for testifying and denied that they were doing so in exchange for more favorable treatment by the Commonwealth. *See* Trial Ct. Op., 11/21/22, at 25-26. Therefore, to the extent the trial court improperly limited the scope of cross-examination at trial, that testimony would not have affected the outcome of trial.

### Sufficiency of the Evidence

Appellant also challenges the sufficiency of the evidence underlying his convictions because the Commonwealth failed to present evidence as to when the abuse occurred. Appellant's Brief at 33-37.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh

- 14 -

the evidence and substitute our judgment for that of the fact-finder.

**Commonwealth v. Palmer**, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

> This Court has explained:
>
> It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty . . . ." The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense.
>
> However, "[d]u[e] process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a single specific date of an alleged crime. **Commonwealth v. Devlin**, 333 A.2d 888, 892 (Pa. 1975). Additionally, "indictments must be read in a common sense manner and are not to be construed in an overly technical sense." Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. **See** Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.

**Commonwealth v. Koehler**, 914 A.2d 427, 436 (Pa. Super. 2006) (some citations omitted).

> Here, the trial court addressed Appellant's claim as follows:
>
> [Appellant] contends here that the evidence is insufficient to sustain any of the guilty verdicts simply because the victim was not only unable to specify dates and times of the criminal conduct of [Appellant], but identified only a several year time period during which it occurred multiple times.
>
>             \*      \*      \*
>
> This court first notes that the information filed in this matter by the Commonwealth claimed that the allegations made by the

- 15 -

victim against [Appellant] are alleged to have occurred "on or about 2005 through May 2012." **See** Criminal Information, 4/30/2019. [Appellant] then filed a "motion for bill of particulars." At the hearing held on that motion the victim refined the time period. [Appellant] argues here that pursuant to **Commonwealth v. Devlin**, 333 A.2d 888 (Pa. 1975), the charges against him should be dismissed as a violation of his 14th Amendment due process rights under the U.S. Constitution and Article 1, § 9 of the Pennsylvania Constitution. The Supreme Court of Pennsylvania stated, "[w]e do not feel the Commonwealth's proof to the effect that the crime was committed on any single day within a fourteen-month period meets the 'sufficiency particularity' standard . . . to hold otherwise would violate the notions of fundamental fairness embedded in our legal process." **Commonwealth v. Devlin**, 333 A.2d 888, [890-91] (Pa. 1975). [Appellant] proffers that the court's decision in **Devlin**, supports a dismissal of these charges.

[Appellant]'s reliance, however, on **Devlin** is misplaced. First, as noted by the Commonwealth, it is appropriate to provide "broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." **See Commonwealth v. G.D.M., Sr.**, 926 A.2d 984, 990 (Pa. Super. 2007). This is especially true when dealing with a child victim, where those events are numerous and occur over any extended period of time. **Id.** at 990. In the case *sub judice*, the victim testified as to a series of improper sexual incidents with [Appellant] over several years. These acts occurred from between the starting age of 5 until almost 10. Further, at no time did [Appellant] ever raise a possible alibi defense that could have heightened the obligation on the Commonwealth to provide even more specificity as to the dates and times these incidents occurred. Thus, this court finds that the dates of offenses, as provided by the Commonwealth and as testified to by its witnesses were proven with sufficient specificity to support the jury's verdicts of guilty.

Trial Ct. Op., 11/21/22, at 4-6 (some formatting altered).

Following our review of the record, the parties' briefs, and the trial court's conclusions, we affirm on the basis of the trial court's analysis of this issue. **See id.** Specifically, we agree with the trial court that the

- 16 -

Commonwealth provided sufficient evidence to establish the range of dates in which the offenses occurred. Therefore, Appellant is not entitled to relief.

**Weight of the Evidence**

Appellant also argues that the verdict was against the weight of the evidence because the eyewitnesses were not credible and provided "wildly divergent accounts of what occurred and how many times it was supposed to have occurred." Appellant's Brief at 39-42. Appellant asserts that "[t]he witness testimony was so conflicting, tenuous, vague, and uncertain that the verdict should shock the conscious of this Court." *Id.* at 42. He further claims that "[t]he weight given to the Commonwealth's witness testimony is wholly unreliable[]" and should be "weighed against the fact there was no physical evidence and Appellant's own testimony denying the allegations should implore this Honorable Court to remand this case for a new trial." *Id.*

When reviewing the denial of a motion for a new trial based on weight of the evidence, we are governed by the following standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa. Super. 2017) (citations omitted).

> As this Court has repeatedly stated,
>
> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> *      *      *
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Spence***, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered); ***see also Commonwealth v. Jacoby***, 170 A.3d 1065, 1081 (Pa. 2017) (stating that "inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence").

Here, the trial court addressed Appellant's weight claim as follows:

> In this case, the Commonwealth presented two eyewitnesses to some or all of the crimes charged. That testimony came from the

victim herself and [Appellant]'s co-defendant, Greg Wagner. [Appellant] argues that these two eyewitnesses gave wildly divergent accounts of what happened, when it happened[,] and how often it happened. Admittedly, there were discrepancies in some of their testimony, however, the court painstakingly made sure that the jury was provided with the appropriate instructions on the issue of weight and credibility of the testimony of various witnesses, and how to consider and address the conflicts in that testimony. Additionally, notwithstanding corroborating testimony, the court provided instruction to the jury on their ability to convict [Appellant] on the victim's uncorroborated testimony should they discount or disbelieve all other testimony.

This court's review of the evidence presented in this case supports the verdicts of the jury and was not so "incredible" to shock any one's sense of justice. This court believes that the jury took their role as "Judges of the Fact" seriously and deliberately and rendered verdicts that justice dictated. This court sees nothing in those verdicts to warrant a new trial.

Trial Ct. Op., 11/21/22, at 7-8 (some formatting altered).

Following our review of the record, the parties' briefs, and the well-reasoned opinion of the trial court, we find no abuse of discretion by the trial court in rejecting Appellant's weight claims. *See* Trial Ct. Op., 11/21/22, at 7-8; *Jacoby*, 170 A.3d at 1080-81. Accordingly, we affirm on the trial court's analysis of this issue.

**After-Discovered Evidence**

Appellant next argues that the trial court erred in rejecting his after-discovered evidence claim. Appellant's Brief at 73. Specifically, Appellant refers to evidence "that the [victim] had received the sum of $1,000.00 in victim's assistance fund[s] for relocation purposes." *Id.* Appellant argues that he has met the four-pronged after-discovered evidence test and emphasizes that he would have used that evidence to establish that the victim

- 19 -

testified in exchange for payment. *Id.* at 73-75. Therefore, Appellant concludes that a "new trial is warranted and should be granted." *Id.* at 75.

> When we examine the decision of a trial court to grant a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. If a trial court erred in its application of the law, an appellate court will correct the error.

*Commonwealth v. Padillas*, 997 A.2d 356, 361 (Pa. Super. 2010) (citations and quotation marks omitted).

In order to be granted a new trial based on an after discovered evidence claim, a defendant must show the evidence:

> 1) has been discovered after trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach a witness's credibility; and 4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Cousar*, 154 A.3d 287, 311 (Pa. 2017) (citations omitted).

Here, the trial court addressed Appellant's after-discovered evidence claim as follows:

> [Appellant] next argues that he is entitled to a new trial on what he refers to as "after discovered evidence," to wit: that the victim received $ 1,000.00 from the victim compensation assistance program for relocation expenses from the home where she resided with her uncle, the other perpetrator, Greg Wagner. This move

- 20 -

occurred in 2019 and [Appellant] alleges he was unaware of the existence of this payment before trial as it was "confidential."

*     *     *

The court scheduled a hearing on the entire post-sentencing motion originally for September 1, 2022, but continued it at [Appellant's] request to September 8, 2022. At that time, counsel for [Appellant] had indicated that they would like to simply submit argument on briefs. The court obliged. Thus, no testimony was presented nor record created. Thus, without supporting evidence, [Appellant] cannot and did not satisfy his burden on this matter. Further, [Appellant] argues that had he been made more aware of this information prior to trial, he would have been able to cross-examine the victim about these monies being the motivation behind her testifying in this case. This is an absolutely dubious argument which insults the intelligence of this victim.

First of all, [Appellant's] actions culminated in an investigation, the filing of charges and the holding of a preliminary hearing long before the victim ever received these monies. To say that she was motivated to continue to pursue a criminal action against [Appellant] for rape because of the argument of $1,000.00 for moving expenses under these circumstances is incredulous.

Trial Ct. Op., 11/21/22, at 18-20 (some formatting altered).

Following our review of the record, the parties' briefs, and the well-reasoned opinion of the trial court, we find no abuse of discretion by the trial court in rejecting Appellant's after-discovered evidence claim. **See id**; **Padillas**, 997 A.2d at 361. Accordingly, we affirm on the trial court's analysis of this issue.

**Discretionary Aspects of Sentencing**

Appellant also argues that the trial court abused its discretion by failing to consider mitigating factors and imposing an excessive sentence.[5] Appellant's Brief at 79. Specifically, Appellant contends that "[i]t is clear [that Appellant] was young and delinquent at the time of the occurrence and [the c]ourt has failed to consider [Appellant's] rehabilitative needs based off [Appellant's] history and when the crimes occurred." *Id.* at 81. Further, Appellant claims that the trial court "should not have allowed, nor considered, the testimony of Special Agent McGlynn regarding two episodes from [Appellant's] career as a police officer involving his alleged interaction with adult females that did not amount to illegal conduct." *Id.*

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

(1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P.

---

[5] In his brief, Appellant also argues that the trial court imposed "an illegal*, ex post facto* penalty" by ordering him to serve a consecutive term of probation for rape of a child. **See** Appellant's Brief at 81. Pursuant to the plain language of 42 Pa.C.S. § 9718.5, defendants convicted of offenses enumerated in subsection 9799.14(d) are subject to imposition of "a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court." 42 Pa.C.S. § 9718.5(a). Section 9799.14(d)(2) includes rape of a child as a Tier III offense. Here, because Appellant was convicted of rape of a child, a Tier III offense, he was subject to the mandatory probationary sentence set forth at Section 9718.5. Therefore, he is not entitled to relief on this claim.

2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Grays*, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record reflects that Appellant preserved this issue by raising it in his post-sentence motion, filing a timely notice of appeal and a court-ordered Rule 1925(b) statement, and including a Rule 2119(f) statement in

his brief. **See Corley**, 31 A.3d at 296. Further, Appellant's claim raises a substantial question for our review. **See Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question" (citation omitted)). Therefore, we will review the merits of Appellant's claims.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

- 24 -

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation [(PSI)].

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

*Raven*, 97 A.3d at 1253-54 (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on [the] victim and community, and [the] rehabilitative needs of the defendant[.]" ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Commonwealth v. Schutzues***, 54 A.3d 86, 99 (Pa. Super. 2012) (citations omitted).

Additionally, the trial court "must consider the sentencing guidelines." ***Fullin***, 892 A.2d at 848(citation omitted). However, "where the trial court is informed by a PSI [report], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court

has been so informed, its discretion should not be disturbed." **Commonwealth v. Edwards**, 194 A.3d 625, 638 (Pa. Super. 2018) (citation omitted and formatting altered).

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. **See Commonwealth v. Kurtz**, 294 A.3d 509, 536 (Pa. Super. 2023), *appeal granted on other grounds*, --- A.3d ---, 289 MAL 2023, 2023 WL 7123941 (Pa. filed Oct. 30, 2023). In conducting appellate review, this Court "cannot reweigh sentencing factors and impose judgment in place of sentencing court where lower court was fully aware of all mitigating factors[.]" **Id.** (citation omitted).

Here, the trial court explained:

[Appellant] was charged and convicted of various sex related offenses for conduct which occurred multiple times with the victim. Thus, it is appropriate for a court to impose sentences that are within the standard sentencing guideline range, involve mandatory sentences[,] and run consecutive. The sentences imposed upon [Appellant] were in the standard sentencing guideline ranges (with the exception of the mandatory sentence imposed on the IDSI offense). A sentence imposed within the standard sentencing guidelines is considered an appropriate sentence. **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010). Additionally, it is within the authority and discretion of the court to impose consecutive sentences. **Commonwealth v. Austin**, 68 A.3d 798, 808 (Pa. Super. 2013). There is nothing inappropriate with the sentences imposed here, as the consecutive sentences were imposed on different crimes occurring at different points in time. Therefore, this court finds no abuse of discretion in these sentences either singularly or in the aggregate, nor does it find them to be excessive or manifestly unreasonable.

\* \* \*

This court did consider [Appellant]'s "rehabilitative needs" in fashioning the state sentences and the likelihood of whether a defendant in denial will ever truly be rehabilitated. This court likewise balanced this factor against the other factors of protecting the public and that of how the gravity of the offenses impacted the victim. While there was reference made to Dr. Frank Datillio's psychological evaluation of [Appellant], an opinion of which suggests [Appellant] is at low risk to re-offend, the other factors mitigate against any other type or shorter length of the sentences. [Appellant] is a convicted child rapist of a victim who expressed significant anger and resentment towards [Appellant] in her victim impact statement noting that "the hurt that I feel never goes away." Clearly, rehabilitative needs were considered but are outweighed by these other factors.

[Appellant] argued for mitigation of his sentences. In support of this request, he suggested a number of issues that should allow for the court to sentence [Appellant] in the mitigated ranges, namely, [Appellant]'s lack of any pedophilic or other sexual disorders, his education and work experience as a police officer, the various character reference letters, various newspaper articles, awards and citations that proclaim or evidence his work as a police officer and his young age at the time of the commission of these offenses.

Conversely, the Commonwealth argued that [Appellant]'s career as a police officer was not as exemplary as he made it out to be. Additionally, [Appellant] meets the diagnostic criteria for an unspecified personality disorder, turbulent type with histrionic, narcissistic, and compulsive personality features. This court further noted that "even if I accepted everything regarding [Appellant]'s exemplary police record without taking into consideration anything that the Commonwealth presented contrary to that, I do not find that to be a basis to mitigate a sentence . . ." Even if the court discounted this Commonwealth evidence, which occurred post-crime, there is still an insufficient basis to sentence [Appellant] in any mitigated range.

Trial Ct. Op., 11/21/22, at 9-13 (some formatting altered, footnotes omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. The record reflects that the

trial court ordered a PSI report, which it reviewed prior to sentencing. *See* N.T. Sentencing Hr'g, 7/15/22, at 6-8, 45. Therefore, we presume that the trial court was aware of the mitigating factors and considered them when imposing Appellant's sentence. *See Edwards*, 194 A.3d at 637; *see also Kurtz*, 294 A.3d at 536. Further, we will not re-weigh those factors on appeal. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (explaining that the appellate court cannot reweigh sentencing factors and impose its judgment in place of sentencing court where lower court was fully aware of all mitigating factors). Under these circumstances, we have no basis to conclude that the trial court abused its discretion in imposing Appellant's sentence. *See Edwards*, 194 A.3d at 637; *Raven*, 97 A.3d at 1253. Therefore, Appellant is not entitled to relief.

**SORNA Registration Requirements**

In his remaining claim, Appellant argues that the trial court erred in requiring him to register under Subchapter I of SORNA because it does not apply to juvenile offenders. Appellant's Brief at 71-72 (relying on *Commonwealth v. Haines*, 222 A.3d 756 (Pa. Super. 2019) and *Commonwealth v. Zeno*, 232 A.3d 869 (Pa. Super. 2020)).

The Commonwealth responds that there was evidence establishing that Appellant "committed some sex offenses after he turned 18 in October 2009." Commonwealth's Brief at 44. Therefore, the Commonwealth argues that unlike the juvenile defendants in *Haines* and *Zeno*, Appellant is subject to registration under Subchapter I. *Id.*

Subchapter I of SORNA applies to offenders who committed an enumerated sex offense on or after April 22, 1996, but before December 20, 2012. ***See*** 42 Pa.C.S. §§ 9799.51 – 9799.75. Pursuant to Subchapter I, defendants convicted of rape, aggravated indecent assault, or IDSI are subject to lifetime registration. 42 Pa.C.S. § 9799.55(b)(2)(i)(A).

This Court has explained:

> In ***In re J.B.***, 107 A.3d 1 (Pa. 2014), the Pennsylvania Supreme Court concluded that "SORNA's registration requirements improperly brand all juvenile offender's reputations with an indelible mark of a dangerous recidivist even though the irrebuttable presumption linking adjudication of specified offenses with a high likelihood of recidivating is not 'universally true'" ***Id.*** at 19. It concluded "the application of SORNA's current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by utilizing an irrebuttable presumption." ***Id.*** at 19-20.

> In ***Haines***, this Court concluded that the "***J.B***. court's holding should apply with equal weight to juvenile adjudications as well as to defendants convicted as adults for crimes committed as juveniles." [***Haines***], 222 A.3d at 759. Therefore, following ***Haines***, a person convicted in criminal court for acts committed while a juvenile cannot be required to register under SORNA.

***Zeno***, 232 A.3d at 872.

Here, the Commonwealth presented evidence establishing that Appellant committed the sexual assaults both before and after his eighteenth birthday. ***See*** Trial Ct. Op., 11/21/22, at 8-9 (citing N.T. 3/8/22 at 63-64 (reflecting the victim's testimony that the abuse occurred continued until just before her tenth birthday in 2010, which was after Appellant's eighteenth birthday)). Therefore, because Appellant is not subject to SORNA solely based

on acts that he committed as a juvenile, *cf. Haines*, 222 A.3d at 759; *Zeno*, 232 A.3d at 872, he is not entitled to relief.  For these reasons, we affirm.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date:  2/28/2024